**John WOLENS, Plaintiff-Appellant,**

v.

**F.W. WOOLWORTH CO., J.C. Penney Company, Inc., and Wear-Ever Aluminum, Inc., Defendants-Appellees.**

Nos. 82–1734, 82–1774.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1982.

Decided March 10, 1983.

---

Raymond P. Niro, Hosier, Niro & Daleiden, Chicago, Ill., for plaintiff-appellant.

Herbert C. Brinkman, Wood, Herron & Evans, Cincinnati, Ohio, for defendants-appellees.

Before PELL and BAUER, Circuit Judges, and TIMBERS,* Senior Circuit Judge.

PELL, Circuit Judge. ·

Wolens appeals from the district court's judgment, following a full hearing, that two models of popcorn poppers manufactured by Wear-Ever Aluminum, Inc. and sold by the other named defendants do not infringe his patented hot-air popper. The defendants cross-appeal from the district court's holding that the Wolens patent was neither obvious nor anticipated by the prior art and is therefore valid.

## I. FACTS

### A. The Plaintiff and His Patented Device

Wolens began designing a popcorn popper that would utilize hot air in 1971. Initially, Wolens experimented with a recirculating air flow system, one that would recapture the hot air used to pop the corn so that it could be reheated to pop more kernels. Wolens found this concept impractical and abandoned it in favor of a popper that depended upon "charging" hot air into a vessel containing unpopped kernels of corn.[1]

On September 4, 1973, United States Letters Patent No. 3,756,139 for "Popcorn Popper" issued to Wolens (Wolens patent). Claim 1 of this patent reads as follows:

> 1. A device for popping kernels of popcorn comprising:
>
> a receptacle for receiving corn which has been popped;
>
> a popping vessel for receiving kernels of popcorn to be popped, said vessel being arranged within said receptacle; and
>
> means for charging a stream of hot air vertically downward into said popping vessel, said stream of hot air heating kernels of popcorn to be popped in said popping vessel to popping temperature and directing corn which has been popped upward out of said popping vessel into said receptacle.

Dependent claims of the Wolens patent that are relevant to the instant appeal are as follows:

> 4. The device of claim 1 further including means for covering said receptacle to prevent popped corn from said popping vessel from passing outside said receptacle, said covering means being vented with respect to said receptacle to permit escape of air from said charging means.
>
> 6. The device of claim 5 wherein said charging means is supported by said covering means in a position above said receptacle and said popping vessel.

As the claims indicate, the Wolens device includes an inner container called a "popping vessel." This vessel, in which the unpopped corn is placed, is located within a "receptacle." A hot air blower, mounted above the popping vessel, charges a stream of hot air into the vessel. The kernels of corn are heated by this stream of air to popping temperature. As the corn pops, it is driven out of the popping vessel and into the receptacle.[2]

---

* William H. Timbers, Senior Circuit Judge for the Second Circuit, sitting by designation.

1. "Charging," as used in this context means to pressurize, thereby storing thermal energy and increasing the heat content.

2. An illustration of the Wolens popper, which appears in the district court's opinion as well, is reproduced in the Appendix to this opinion. Because one of Wolens' contentions before this court is that the judge below erroneously limited his patent to the illustration, we expressly

During prosecution of the Wolens patent, the Examiner cited the following prior art references:

| Gillitt | Patent No. 1,206,693 |
| Nelson | Patent No. 2,606,134 |
| Green | Patent No. 2,922,355 |
| Lindemann | Patent No. 3,059,567 |
| Gottlieb | Patent No. 3,570,388 |

Wolens' attorney cited four additional prior art references to the Patent Office. The following three patents were not cited:

| Pritchard | Patent No. 1,648,005 |
| Grant | Patent No. 3,323,440 |
| Wilsey | Patent No. 2,241,754 |

The Patent Office allowed the Wolens patent on first action.

From 1972 through 1979, Wolens tried unsuccessfully to interest several appliance manufacturers in producing hot air popcorn poppers under his patent.

## B. The Defendants and the Alleged Infringing Devices

The defendant Wear-Ever Aluminum Inc. (Wear-Ever) manufactures cooking utensils. In 1976, Wear-Ever accepted a proposal for development of a hot-air popcorn popper by Design & Development, Inc. Wear-Ever introduced the resulting device, its Model 72000 popcorn popper, at the January 1978 Housewares Trade Show. On December 18, 1979, United States Patent No. 4,178,843, disclosing the Model 72000 popper, was issued and assigned to Wear-Ever (Crabtree patent).

The Crabtree patent discloses a popper in which heated air is circulated horizontally in a cylindrical popping chamber. The air is introduced into the popping chamber through slanted vanes near the bottom of the chamber. A fluidized bed of swirling and circulating corn results. As the corn is popped, it is lifted upward by the moving air and the increasing volume of popped corn. It is discharged through an open

note that the illustration represents one embodiment of the patented device.

**3.** An illustration of the device disclosed by the Crabtree patent appears in the Appendix to this opinion.

chute at the top of the popping chamber into a container provided by the user.[3]

The Wolens patent was not among the prior art references cited by the Examiner during the pendency of the Crabtree patent.

In January, 1981, Wear-Ever introduced its Model 73000 corn popper. This model had been designed to counter foreign and domestic competitors who had copied the Model 72000 popper at substantial cost savings. Although the Model 73000 popper differs from the Model 72000 in details of construction, the parties do not dispute the district court's finding that the Model 73000 popper functions in the same way as the Model 72000 device.[4]

The other defendants in this action, F.W. Woolworth Co. and J.C. Penney Co., Inc., sell the Wear-Ever poppers.

## C. Proceedings Below

In 1977 and 1978 Wolens tried to interest Wear-Ever in purchasing his patent. Wear-Ever declined. Wolens brought suit against the defendants, alleging patent infringement, in 1979. The defendants, in turn, challenged the validity of the Wolens patent on cross-appeal.

The suit was tried as to the Model 72000 popper between September 29, 1980 and October 7, 1980. The district court heard the testimony of fourteen witnesses, including four expert witnesses. The court also witnessed twenty-four physical demonstrations involving the actual operation of the Model 72000 and a Wolens prototype popper.

A reopened trial was held on November 4 and 5, 1981, to consider Wolens' allegations of infringement regarding the Model 73000 Wear-Ever popper. The court heard the testimony of three technical experts as well as that of other witnesses. Thirteen additional demonstrations were held.

**4.** The differences between the two models create no issue relevant to this appeal. The Model 72000 and Model 73000 poppers are therefore referred to collectively as the "Wear-Ever poppers."

The district court entered judgment for the defendants on the infringement claim and for the plaintiff on Wear-Ever's cross-appeal challenging the validity of the Wolens patent.

## II. INFRINGEMENT

Wolens' appeal from the district court's holding that the two Wear-Ever poppers do not infringe his patent alleges several errors of law including, but not limited to, the assertion that the district court failed to apply the doctrine of equivalents. After setting forth the general rules applicable to an infringement action, we address those arguments that arguably pertain to literal infringement by Wear-Ever.[5] We then discuss Wolens' assertion that the district judge failed to apply the doctrine of equivalents.

### A. General Rules Relevant to Infringement Actions

■ In a patent infringement action, the plaintiff has the burden of proving infringement. *Price v. Kelly,* 154 U.S. 669, 670, 14 S.Ct. 1208, 26 L.Ed. 634 (1881). The claims of a patent are what define the scope of the invention. *E.g., Smith v. Snow,* 294 U.S. 1, 11, 55 S.Ct. 279, 283, 79 L.Ed. 721 (1935). For infringement of a product patent to be found, each element of the claim must be found in the accused structure. *E.g., Keating v. Stearnes Imperial Co.,* 347 F.2d 444, 445 (7th Cir.1965).

■ The question of infringement is generally a factual determination which will not be disturbed on appeal unless it is clearly erroneous. *E.g., Ferment-Acid Corp. v. Miles Laboratories, Inc.,* 338 F.2d 586, 588 (7th Cir.1964). There is authority for the proposition that when the findings and conclusions of the trial judge regarding infringement are based wholly or primarily upon documentary and physical evidence

the reviewing court is free to review the evidence *de novo. Nasco Inc. v. Vision-Wrap, Inc.,* 352 F.2d 905, 908 (7th Cir.1965). This rule is inapplicable, however, when there is also substantial witness testimony introduced in connection with such exhibits; in such a case, the "clearly erroneous" standard applies. *Reese v. Elkhart Welding & Boiler Works, Inc.,* 447 F.2d 517, 520–21 (7th Cir.1971).

■ The instant case involves a significant amount of witness testimony before the district court, including testimony by technical experts. Much of the physical evidence was introduced through or amplified by this testimony. Consistent with *Reese,* therefore, Wolens can succeed on appeal only if he demonstrates that the judgment below was clearly erroneous.

### B. Literal Infringement

Wolens alleges that the district judge limited the Wolens patent to its drawings rather than its claims, failed to apply the rule of claim differentiation, failed to consider the infringing capability of the Wear-Ever poppers under all conditions of operation, and erroneously relied on the Wear-Ever patents rather than the actual poppers in determining whether infringement existed.

Initially, we note that there is absolutely no support in the record for Wolens' assertion that the court below relied upon the patents pertaining to the Wear-Ever poppers rather than the actual devices in making his determination. The two models of popcorn poppers were much in evidence at the trials; in fact, demonstrations utilizing the poppers were conducted and were relied upon in the district court's disposition of the case.

Second, we discuss the Supreme Court precedent relevant to the other arguments posed by Wolens. In *Smith v. Snow,* 294

---

**5.** It is unclear whether Wolens believes that the district court would have found literal infringement had it not erred in the ways enumerated in Section II(B), *infra,* or whether these arguments are intended as subsidiary points pertinent to Wolens' allegation that the district judge failed to apply the doctrine of equivalents. We discuss the arguments in Section II(B) first because we find them analytically distinct from the question whether the judge below applied correctly the doctrine of equivalents.

U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721 (1935), the Court considered whether the first claim of Smith's patent for an improved apparatus and method for the incubation of eggs was infringed. At issue was whether the claim required a particular arrangement of eggs within the incubator and a particular means of guiding the current of heated air through the incubator. Both were made explicit in the specifications and drawings relating to Smith's first claim but neither was stated in the literal language of the claim. *Id.* at 11, 55 S.Ct. at 284. The Court stated that Smith was not confined to the one particular mode of use "since the claims of the patent, not its specifications, measure the invention." The specifications are not entirely irrelevant, however, as the Court stated in *United States v. Adams,* 383 U.S. 39, 49, 86 S.Ct. 708, 713, 15 L.Ed.2d 572 (1966): "[I]t is fundamental that claims are to be construed in the light of the specifications and are to be read with a view to ascertaining the invention."

■ The rule of claim differentiation was also relevant to the Supreme Court's disposition in *Snow.* Other claims of the *Snow* patent disclosed how the current of air was to be directed and the direction it would follow. These aspects of the invention were not disclosed in Claim 1. The Court stated: "Thus by striking and obviously intended contrast with other claims, Claim 1 covers broadly the essential elements of the Smith invention as we have already described it." 294 U.S. at 14, 55 S.Ct. at 284. Claim differentiation requires that limitations of one claim not be "read into" a general claim.

These rules are relevant to Wolens' allegations that the district court erred in limiting the disclosures of his patent, and particularly his Claim 1, regarding the direction of charged air, the receptacle, and the "vessel within a receptacle."

1. Direction of Charged Air.

Claim 1 of the Wolens patent recites, in part, a "means of charging a stream of hot air vertically downward." The district judge found that the Wear-Ever poppers introduce air "into the popping chamber through slanted vanes close to the bottom of the chamber [and it] enters the chamber in a horizontal swirl ... [and] then flows upwardly through the chamber as it circulates and exits from the top thereof." Wolens' assertion is that the charging demonstrated by the Wear-Ever poppers is the same as that disclosed in his Claim 1.

Wolens contends that the district court read the limitation of Claim 6 into Claim 1 in disregard of the *Snow* rule of claim differentiation. Claim 6 states: "The device of claim 5 wherein said charging means is supported by said covering means in a position above said receptacle and said popping vessel."

■ The district judge described the Wolens patent as "disclos[ing] hot air being introduced from the top of the popping vessel and being directed vertically downward into the vessel." This finding does not rely in any way on where the charging means is located or how it is supported, the two factors that are the subject of Claim 6; rather, the district judge's finding virtually restates the language of Wolen's Claim 1. Relying on the language of the claim is precisely what *Snow* requires. If the Wear-Ever poppers had a charging device located to the side or near the bottom of the "receptacle" but nonetheless introduced charged hot air vertically downward, the rule of claim differentiation would have relevance to this case. That is not the situation, however, and we find absolutely no authority for the proposition that the rule of claim differentiation requires one to ignore express language in the claim allegedly infringed.

The district judge's reliance on the express language of Claim 1 also answers Wolens' objection that his patent was limited to its drawing. The drawing illustrates one means of charging hot air vertically downward. The district judge's finding was not that Wear-Ever had achieved a vertically downward charging of air by a different means than that illustrated; it was that no vertically downward charging occurred at all.

Finally, Wolens asserts, supported by testimony based on out-of-court experiments, that the Wear-Ever poppers, when used to pop less than a full load of popcorn, do produce a downward core flow. Wolens states that this core flow, which was allegedly ignored by the district court, is important because it helps form a seal that maintains the thermal energy in the Wear-Ever popping vessels, thereby producing the same result as the vertically downward charged air disclosed in his Claim 1.

The defendants' evidence, however, based on in-court experiments, indicated that downward core flow was present in the Wear-Ever poppers only during the last portion of the popping cycle. The experiments included one conducted with a quarter load of popcorn. The defendants also demonstrated that the temperature of the downward air flow, when it did occur, was approximately 300° whereas the Wolens patent claimed a temperature of 500°, or at least one high enough actually to heat the kernels to popping temperature.

There is a difference, therefore, between the function of whatever downward flow exists in the Wear-Ever poppers and that in the Wolens device. In the Wear-Ever poppers, the downward flow does not heat the kernels to popping temperature whereas in the Wolens popper it does. Even more significant, however, is the fact that the district court was presented with evidence that differed as to the amount of core flow. The trial judge credited the defendants' evidence over that offered by the plaintiff. The district judge did not "ignore" core flow as Wolens asserts. Further, the trial judge's crediting the evidence of the defendants is not clearly erroneous, particularly because the defendants' evidence was based on experiments performed before the trial judge.

█ We conclude that the district judge neither ignored nor applied incorrectly the pertinent legal standards in concluding that Wolens' claim disclosing a vertically downward flow of charged air was not infringed by the Wear-Ever poppers.

2. "Receptacle" and "Vessel Within Receptacle."

█ Claim 1 of the Wolens patent also discloses "a receptacle for receiving corn which has been popped" and "a popping vessel for receiving kernels of popcorn to be popped, said vessel being arranged within said receptacle."

Wolens contends that the district court's conclusion that the Wolens patent "never contemplated that the user would provide a separate receptacle" indicates that the district court erroneously limited Claim 1 to the specific form of receptacle illustrated in the Wolens patent. There is no basis for this charge. The district judge relied on the language of Claim 1 and the plain meaning of the word "receptacle." Quoting Webster's New Collegiate Dictionary, he found that "receptacle" means "one that receives and contains something; a container." The trial judge concluded that the chute embodied in the Wear-Ever poppers was not *any* kind of receptacle.

Wolens further asserts that the district judge erroneously read Claim 4 into Claim 1. The relevant portion of Claim 4 includes the limitation that the popper include a "means for covering said receptacle to prevent popped corn ... from passing outside said receptacle." Wolens reasons that if the claims are properly differentiated, Claim 1 must refer to a receptacle that permits popped corn to pass outside. This argument is not persuasive. The district judge did not rely on the fact that the Wolens receptacle had to be "covered" as disclosed by Claim 6; he merely required that it be a "container" and found that the chute, utilized by the Wear-Ever poppers, was not.

The same erroneous reasoning underlies Wolens' assertions regarding the district judge's finding that the Wear-Ever poppers do not include a "popping vessel" located within a "receptacle." It is not only the drawing of the Wolens patent but the express language of Claim 1 that states this limitation. The fact that the Wear-Ever poppers lack a receptacle is sufficient an-

swer to Wolens' argument. Even if one agreed with Wolens, however, that the Wear-Ever chute constitutes a receptacle, the Wear-Ever popping vessel [6] is located *below* and not within the chute. The design of the chute, such that the popped corn is eventually forced through it, does not mean that the vessel lies "within" the chute as Wolens asserts.

### 3. Summary.

The district court applied the relevant principles of patent law, despite Wolens' allegations to the contrary. The district judge did no more than limit Wolens' Claim 1 to the express disclosures in that claim. This is consistent with the established principle that "an applicant who used words of common meaning and finds they do not cover a subsequently created structure will not be permitted to place a new or different meaning that will cover said subsequently appearing structure." *Universal Oil Products Co. v. Globe Oil & Refining Co.,* 137 F.2d 3, 6 (7th Cir.1943), *aff'd,* 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944). In limiting Wolens' invention to a popcorn popper in which air is charged vertically downward and which contains a popping vessel located "within" "a receptacle," the judge below made no finding that is clearly erroneous.

### C. Doctrine of Equivalents

Wolens contends that even if the Wear-Ever poppers do not literally infringe Claim 1 of his patent, a finding of infringement is inevitable if one correctly applies the doctrine of equivalents. Wolens' assertion is that the trial judge erred as a matter of law by failing to consider the doctrine.

In *Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 608,

70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950), the Supreme Court stated that a patentee may invoke the doctrine of equivalents "to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result'" (quoting *Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929)). In his opinion denying Wolens' infringement claim, Judge Roszkowski stated: "In order to infringe a patent, the accused structure must utilize substantially the same elements operating in substantially the same way to produce substantially the same result." Although the trial judge did not use the term "doctrine of equivalents," the standard upon which he relied clearly embodies the doctrine.

Immediately following the above-quoted statement of the applicable standard, the district judge held that the "plaintiff has not met his burden of proving infringement." This represents a finding that the Wear-Ever poppers are not the equivalent of the device patented by Wolens. A finding as to equivalence is a question of fact and will not be disturbed on appeal unless it is clearly erroneous. *Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 609–10, 70 S.Ct. 854, 856–57, 94 L.Ed. 1097 (1950).[7]

We must therefore determine whether the district judge's finding of nonequivalence is clearly erroneous. Wolens raises a threshold question as to the range of equivalents to be accorded his invention, asserting that because his popcorn popper is a "pioneering" invention, it is entitled to the broadest possible range of equivalents. *E.g., Hildreth v. Mastoras,* 257 U.S. 27, 36, 42 S.Ct. 20, 24, 66 L.Ed. 112 (1921).

---

**6.** The district court in fact found that the Wear-Ever poppers do not include a "vessel" within the teaching of the Wolens patent. We do not imply disagreement with this conclusion. We neither need to nor do address this question in light of our disposition regarding the other points on which Wolens relies.

**7.** Although Judge Roszkowski's finding appears in the portion of his opinion denominated "Conclusions of Law," he expressly stated in footnote: "Any conclusion of law which may be more properly termed a finding of fact shall be deemed a finding of fact."

Contrary to Wolens' reading of the opinion below, the trial judge made no explicit finding that the Wolens popper was a pioneering invention. To the extent that such a characterization is even implied, it rests on the district judge's finding, in the validity rather than the infringement portion of his opinion, that "Wolens conceived of popping popcorn by charging the popping vessel with hot air in a vertically downward direction. . . . [A]t the time of the Wolens' invention, there had been no movement by those skilled in the art in the direction of the design which Wolens conceived."

■ The district judge, in this statement and throughout the opinion, coupled the concept of "charging" with "hot air [introduced] in a vertically downward direction." In so doing, he relied on the clear language of Wolens' Claim 1. Wolens' interpretation of the doctrine of equivalents, however, would reduce his claim to one disclosing "charging." He would disregard the requirement that the air be charged *vertically downward.* Whatever range of equivalents is appropriate to Wolens' device, the district judge correctly rejected an application that would have so reduced Wolens' claim.

The Fifth Circuit's disposition in *John Zink Co. v. National Airoil Burner Co.,* 613 F.2d 547 (5th Cir.1980), on which Wolens relies, is not inconsistent with our conclusion. The Zink patent, at issue in the Fifth Circuit case, referred in Claim 5 to "directing steam radially inward" from tubes having end portions directed radially inward. The NAO device, which was alleged to infringe Claim 5, had nozzles that were canted to one side. Despite this difference, the end portions were still directed inward and steam was directed radially inward. *Id.* at 558. The Fifth Circuit held that the district court correctly found the NAO device to be the equivalent of that patented by Zink.

*Zink* is distinguishable from the instant case in two important respects. First, the specific claim of steam directed "radially inward" was achieved in the infringing device whereas the Wear-Ever poppers do not charge air vertically downward. Second, the Fifth Circuit was ·upholding· the judgment below whereas this court is bound to find infringement only if it concludes that the factual finding of the judge below was clearly erroneous.

The requirement of charging a stream of hot air vertically downward is not "substantially the same" as introducing a swirl of hot air below the popcorn. The doctrine of equivalents, as articulated in *Graver,* therefore does not support Wolens' contention that Judge Roszkowski's finding of nonequivalence was clearly erroneous.

Further, even if vertical and horizontal charging were found to be equivalent, a finding of infringement will lie only if the accused device embodies each element of the patented claim. *E.g., Keating v. Stearnes Imperial Co.,* 347 F.2d 444, 445 (7th Cir.1965). Judge Roszkowski's finding that a "chute" is not the equivalent of a "receptacle" alone would bar Wolens' claim of infringement. Wolens' argument regarding the equivalence of the Wear-Ever chute to his receptacle would lead to the absurd result that any charged-air popcorn popper would infringe his patent unless it were designed to spew popcorn randomly about the area in which the popper was located. The district judge correctly avoided such a result by recognizing that the plain meaning of the word "receptacle" prohibits a finding of equivalence.

■ The Wear-Ever popcorn poppers are neither identical to nor the equivalent of the Wolens' invention. Had Wolens succeeded in patenting a device whose only claim was to pop kernels of corn by "charging hot air," his claim of infringement would lie. He apparently did not try, and certainly did not succeed, in obtaining so broad a patent. It is not the province of this court—nor the function of the doctrine of equivalents—to rewrite Wolens' patent so as to encompass the Wear-Ever poppers. *See Universal Oil Products Co. v. Globe Oil*

& Refining Co., 137 F.2d 3, 6 (7th Cir.1943), aff'd, 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944); accord, Ellipse Corp. v. Ford Motor Co., 452 F.2d 163, 169 (7th Cir.1971), cert. denied, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972).

### III. VALIDITY OF PATENT

The defendants assert two grounds of error regarding the district judge's conclusion that the Wolens patent is valid. First, they assert that the trial court erroneously accorded the patent a presumption of correctness. Second, the defendants argue that the district court erroneously applied the standards enunciated in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966), for determining obviousness. We discuss each in turn.[8]

### A. Presumption of Validity

■ As this court stated in Chicago Rawhide Manufacturing Co. v. Crane Packing Co., 523 F.2d 452 (7th Cir.1975), cert. denied, 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976), there are two aspects to the presumption of validity accorded a patent. The first is procedural: the burden of establishing invalidity is on the challenger. This aspect of the presumption is constant in that it is unaffected by the amount of prior art cited or relied upon by the Patent Examiner. Id. at 458. The second aspect of the presumption is that

if it appears that the prior art which is cited to establish invalidity in a judicial proceeding had already been considered by the Patent Office, the burden of overcoming the presumption of validity then

rests heavily on the person attacking the patent. He must make a "clear and cogent" showing in order to prevail.

Id. It is the second aspect of the presumption that is at issue in this case.

The defendants argue that the district judge erroneously applied the "clear and convincing" standard in this case because the Patent Examiner failed to cite three relevant prior patents, as enumerated in Section I(A), supra, in prosecution of the Wolens patent.

The judge below reasoned that because these three patents were classified in one or more of the search subclasses searched by the Patent Examiner, one could conclude that the three patents were examined and were discarded as being no more relevant than the prior art which the Examiner did cite. E.g., Panduit Corp. v. Burndy Corp., 517 F.2d 535, 538 n. 2 (7th Cir.1975), cert. denied, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304.[9] The defendants urge, however, that the Panduit rule is no longer viable in this circuit. They rely on cases stating that one may not assume that a Patent Examiner has considered prior art that is not cited but must presume, in the absence of evidence to the contrary, that the prior art was overlooked. Medical Laboratory Automation, Inc. v. Labcon, Inc., 670 F.2d 671, 673 (7th Cir.1981); Dual Manufacturing & Engineering, Inc. v. Burris Industries, Inc., 619 F.2d 660 (7th Cir.1980) (en banc), cert. denied, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90; Chicago Rawhide Manufacturing Co. v. Crane Packing Co., 523 F.2d 452, 458 (7th Cir.1975), cert. denied, 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976); USM Corp. v. SPS Technologies,

**8.** The defendants do not specifically challenge the trial court's finding that the Wolens device was not anticipated by the prior art. See 35 U.S.C. § 102. As our discussion regarding the defendants' assertion that the Wolens device was obvious, id. § 103, indicates, the district judge was correct in his holding that patentability was not precluded by Section 102.

**9.** The district judge also relied upon the fact that the Pritchard patent was cited in the Green patent which in turn had been cited by

the Examiner. Further, the district judge noted that the Grant patent was issued by the same Examiner who issued the patent in suit. Medical Laboratory Automation, Inc. v. Labcon, Inc., 670 F.2d 671, 673 (7th Cir.1981), suggests that the issuance of the Grand and Wolens patents by the same Examiner would not, in itself, support a presumption that the Examiner had discarded the Grant patent as no more relevant than the prior art that was cited.

*Inc.*, 514 F.Supp. 213, 237–38 (N.D.Ill.1981), *vacated in part on other grounds,* 694 F.2d 505 (7th Cir.1982).

Both the *Panduit* rule and the rule recently restated in *Labcon* are well established in this circuit. They are not contradictory; rather, they address different situations. Neither the *Labcon* decision, nor the earlier cases cited by the defendants, specifically address the situation in which an Examiner has searched a subclass in which the relevant but uncited prior art is classified. In *USM Corp. v. SPS Technologies, Inc.,* 514 F.Supp. 213 (N.D.Ill.1981), *vacated in part on other grounds,* 694 F.2d 505 (7th Cir.1982), SPS's own patent counsel had himself searched the class in which the relevant prior patent was asserted to be filed and could not locate it. In this context, the district court stated that "SPS cannot be heard to ask this court to presume for its benefit that the Parker patent was not cited because it was irrelevant." 514 F.Supp. at 238. *Chicago Rawhide* and *Dual Manufacturing* merely state the rule on which the defendants rely; there is no discussion as to what subclasses had been searched. The *Labcon* case involved a device, urged as prior art, for which a patent was pending at the time the patent in suit was granted. The appellants' argument, which was rejected by this court, was that the pending patent must have been considered because both applications were considered by the same Patent Examiner.

■ None of the cases relied upon by the defendants rejects the rule in *Panduit.* Our conclusion that the rule stated in *Labcon* is not an erosion of *Panduit* is strengthened by the reliance of the *Labcon* and the *Chicago Rawhide* courts on a Seventh Circuit case that predates *Panduit, Milton Manufacturing Co. v. Potter-Weil Corp.,* 327 F.2d 437 (7th Cir.1964). *Panduit* is directly applicable to the case at bar. The district court was therefore correct in requiring the defendants to prove invalidity by clear and convincing evidence.[10]

### B. Obviousness of the Wolens Device

■ The considerations relevant to obviousness are stated in *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). The factual inquiries mandated by *Graham* are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the art. These factual determinations support a conclusion as to whether the claimed subject matter would have been obvious to one skilled in the art. This legal conclusion is one as to which a reviewing court may make an independent judgment. *E.g., E–T Industries, Inc. v. Whittaker Corp.,* 523 F.2d 636, 641 (7th Cir.1975), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976).

In applying the *Graham* factors, the judge below found that all the prior art pertaining to a hot-air popcorn popper taught that the hot air should be "introduced into the popping vessel at a point below the bed of raw popcorn, passed upwardly through the bed, and then drawn away from the popping vessel so that it can be recirculated and reused." The prior art differs, therefore, from the subject matter claimed by Wolens in that charging was not previously disclosed and the hot air had previously been introduced from below the kernels. The district judge also found that the ordinary level of skill in the art at the time of the Wolens invention was that attributable to those with college degrees in engineering and business. Based upon these determinations, the district judge concluded that the Wolens invention was not obvious.

The defendants implicitly reject the district judge's findings as to the difference

**10.** The cross-appellants also urge that the presumption of validity was erroneously accorded the Wolens device because the invention was merely a combination of old elements. Because we find the defendants' characterization of the Wolens popper inaccurate, *see* Section III(B), *infra,* we need not discuss this argument further.

between the Wolens invention and the prior art. They assert that the device patented by Wolens was merely a new combination or rearrangement of old ideas: a receptacle; a vessel for holding the kernels to be popped; and the use of hot air. The defendants virtually ignore the portion of Wolens' Claim 1 which discloses a stream of hot air charged vertically downward. They support their position by urging that Wolens himself has disclaimed the importance of "downward charging" before this court.

Wolens has not disclaimed the importance of charging, although he has urged this court to read his patent as claiming upward or horizontal as well as vertically downward charging. *See* Section II, *infra*.

The defendants also argue that Wolens attached little significance to "charging" at the time of his patent application because he neither defined the term nor elaborated on the advantages of charging. Insofar as this argument purports to reflect Wolens' view of his invention, it is inconsistent with his specific disclosure of "charging" in Claim 1. To the extent that the defendants suggest Wolens had a *duty* to define the term or to specify its advantages, the argument cannot overcome the presumption of validity attributable to a patent that was granted without challenge.

█ We find no error in the district judge's conclusion that Wolens' invention is distinguishable from the prior art because of Wolens' disclosure of "vertically downward charging" of hot air. Because the concept of charging was a departure from the prior art, the defendants' assertion that Wolens merely altered the direction of air flow disclosed in the prior art is without

merit. He *both* altered the direction of the air flow and disclosed, for the first time, the concept of charging.

We further find that the district judge's holding that the Wolens device was not obvious, 35 U.S.C. § 103, is not erroneous as a matter of law. The district judge ascribed a relatively high level of education to those skilled in the art. In this context, it is significant that Wolens was the first to design a hot air popper utilizing vertically downward charging.

## CONCLUSION

The district judge correctly concluded that the defendants-cross-appellants had failed to prove by clear and convincing evidence that the Wolens invention was obvious at the time the patent was granted. Wear-Ever and the other named defendants have not infringed the Wolens' patent because the two models of Wear-Ever popcorn poppers do not contain a receptacle and do not depend on a flow of vertically downward charged air. The Wear-Ever poppers are not the equivalent of the device patented by Wolens.

Having considered all the arguments urged by the parties to this appeal, the judgment of the district court on both the issues of infringement and validity is affirmed.

Both parties have appealed from the judgment of the district court; we are unable to say that the defendants' cross-appeal was merely a defensive maneuver; accordingly, the parties shall bear their respective costs.

AFFIRMED.

APPENDIX

WOLENS

## CRABTREE PATENT