**TYLER REFRIGERATION, Appellant,**

v.

**KYSOR INDUSTRIAL CORPORATION, Appellee.**

**Appeal No. 85–1872.**

United States Court of Appeals, Federal Circuit.

Nov. 15, 1985.

William F. Dudine, Jr., of Darby & Darby, New York City, argued for appellant. With him on brief was Maxim H. Waldbaum, New York City.

Steven J. Rothschild, of Skadden, Arps, Slate, Meagher and Flom, Wilmington, Del., argued for appellee. With him on brief was Edward P. Welch, Wilmington, Del. Also on brief, of counsel, were David W. Crooks, of Kysor Indus. Corp., Cadillac, Mich., and Richard C. Cooper, of Price, Heneveld, Huizenga and Cooper, Grand Rapids, Mich.

Before MARKEY, Chief Judge, and DAVIS and BISSELL, Circuit Judges.

DAVIS, Circuit Judge.

Tyler Refrigeration Corporation (Tyler) appeals from the judgment of the United States District Court for the District of Delaware holding invalid Patent Nos. 4,144,720 (the '720 patent), 4,207,747 (the '747 patent) and 4,283,922 (the '922 patent) (collectively called "the Subera patents")[1] and finding infringement by Tyler of claims 3 and 6 of U.S. Patent No. 4,026,121 (the Aokage patent), owned by appellee Kysor Industrial Corporation (Kysor). We affirm.

## I. Background

### a. The Subera Patents

The Subera patents are directed to the refrigeration and the defrosting of open front, multiple-curtain display cases. These types of cases are widely used in supermarkets for the display of frozen foods, and they utilize two or three parallel air bands which form a curtain and flow down, out and across the open front of the case to protect the foods from the warm room air. The innermost band is a refrigerated or primary band. The secondary band is a guard band and is not refrigerated. The third air band is optional and consists of an ambient flow of air. During the refrigeration cycle, the primary and secondary band are recirculated throughout the interior of the display case as well as across the open front of the case. The ambient band, if used, is not recirculated but flows through a partial duct at the front of the case and down across the face of the case onto the floor.

The portion of the Subera disclosure that is in issue concerns the reverse air flow defrost of the display cases. During the defrost operation, the normal flow of air in the secondary or protective conduit is reversed while the directional flow of air in the primary and ambient conduits remains the same as during the refrigeration cycle. Consequently, the refrigerated or primary air curtain is maintained across the open front of the case throughout the defrost cycle.

### b. The Aokage Patent

The Aokage patent[2] discloses two different embodiments of the reverse flow air defrost of open front, multiple display cases. The first embodiment involves the reversal of the air flow in the ambient and primary conduits. However, it is the second embodiment which relates to the Subera inventions and to the current case. In this embodiment, the Aokage patent discloses reversing the air flow in the secondary conduit while maintaining the flow of air in the primary and ambient conduit in the forward direction as during the refrigeration cycle. Only claims 3 and 6 of the Aokage patent are drawn to this second embodiment.

### c. Prosecution History

Before the U.S. Patent and Trademark Office (PTO), the claims of the Subera '720 patent were initially rejected as being anticipated by the Aokage patent. In an amended application for the '720 patent, Tyler argued that while the Aokage patent was prior art, the patent did not disclose the maintenance of the refrigerated air curtain during defrost as did the Subera invention. Relying upon this argument, the Examiner withdrew the rejection and issued the Subera '720 patent on March 20, 1979. During the prosecution of the later filed '922 patent,[3] Tyler again distinguished the Aokage patent from the Subera inventions in that the Aokage reference did not provide for the maintenance of the air curtain.

---

1. The Subera patents were issued to Elmer J. Subera and Melvin W. Steelman and assigned to the Tyler Refrigeration Corporation.

2. The Aokage patent was issued to Yoshitaka Aokage and Yoshio Yamana. The patent was assigned to Fuji Denski Seizo Kabushiki Kaisha which later assigned it to Kysor.

3. The applications resulting in the '747 and '922 patents were filed on July 26, 1978 and September 17, 1979, respectively, and contained the same disclosure as the '720 patent. The '747 patent issued on June 17, 1980 and the '922 patent on August 18, 1981.

### d. The District Court Proceedings

In the original complaint, as supplemented, Tyler alleged that Kysor infringed the claims of the Subera patents. In reply, Kysor insisted that the Subera patents were invalid and, accordingly, not infringed. Additionally, Kysor alleged that Tyler infringed claims 3 and 6 of the Aokage patent. Before the district court, Kysor maintained that the Subera patents were invalid on two grounds. The first was that the Subera patents were invalid under 35 U.S.C. § 102(b) because the subject of the patents was described in a printed publication more than one year before the filing date of the '720 patent. Secondly, Kysor asserted that the Subera patents were invalid under § 102 as being anticipated by the Aokage patent.

Kysor's motion for summary judgment was denied by the district court[4] which held that there were factual issues as to the teaching of the prior patent and whether the invention was earlier disclosed in printed publications. After a full trial, without a jury, the district court in a judgment[5] dated January 17, 1985, held that the Subera patents were invalid and the Aokage patent was infringed by the Tyler display cases.[6] The findings of the court were that the Subera patents were anticipated by the Aokage patent and by the Japanese printed publications. Further, the court found that the Tyler display cases which were based on the invalid Subera patents infringed the Aokage patent. It is from this judgment that Tyler appeals.

### II. *Anticipation*

It is settled that "a party asserting that a patent claim is anticipated must demonstrate, among other things, identity of invention." *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 771, 218 USPQ 781, 789 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). Further, identity of invention is a question of fact and the challenger must ordinarily show that èach element of the claim in issue is found in a prior patent or publication, either expressly or under principles of inherency. *Id.* at 771, 218 USPQ at 789.

Claims 3 and 6 of the Aokage patent state that during the defrost cycle

> the first and third air circulation means [are operated] in the same forward directions as in the normal cooling operations, and said second air circulation means [is operated] in the direction reverse to that in the normal cooling operation.

These claims make no specific mention that the refrigerated air curtain is maintained across the front of the display case on defrost. Nevertheless, the district court found by clear and convincing evidence that the maintenance of the air curtain during the defrost cycle is an inherent feature of the claimed embodiment and naturally occurs when the air flow in the secondary band is reversed. The probative evidence relied on by the trial court included testimony from Mr. Aokage and several engineers from Fuji Denski Seizo Kabushiki Kaisha, the original assignee of the Aokage patent, that the refrigerated air curtain was automatically maintained when the second band was reversed. The court also reasoned that Mr. Steelman and Mr. Subera, the named inventors in the Subera patents, had admitted the fact of inherency during their testimony at trial and in prior depositions. The inventors attributed nothing in the design of their cases to the maintenance of the primary air curtain and admitted that the only thing responsible for this feature was the reversal of the secondary band. Further, because the Tyler case was constructed no differently from the known and standard practices in the industry, it served to reinforce the court's evi-

---

**4.** *Tyler Refrigeration Corp. v. Kysor Industrial Corp.*, 553 F.Supp. 279 (D.Del.1982).

**5.** *Tyler Refrigeration Corp. v. Kysor Industrial Corp.*, 601 F.Supp. 590, 225 USPQ 492 (D.Del. 1985).

**6.** The judgment also held that the Aokage patent was valid (meaning that it was not invalid). However, the validity of the Aokage patent is not an issue before this court.

dentiary finding of inherence in the Aokage invention.

■ In an action challenging the validity of a patent, anticipation is a factual determination, reviewable under the clearly erroneous standard. *Lindemann Maschinenfabrik v. AM. Hoist and Derrick,* 730 F.2d 1452, 1458, 221 USPQ 481, 485 (Fed. Cir.1984). This court sees no clear error in the district court's finding that claims 3 and 6 of the Aokage patent taught each and every element of the Subera inventions under the principles of inherency. That finding is adequately supported by the evidence before the court.

Tyler argues that, in making its findings, the district court ignored the presumption of validity which was harder to overcome because the PTO had considered Aokage in its determination of the patentability of the Subera patents, and therefore that the burden of proof may be more difficult to meet. *See, e.g., American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359, 220 USPQ 763, 770 (Fed.Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). We think, however, that the district court properly considered all the available evidence on inherency and permissibly determined that Kysor has met its burden of proving anticipation by clear and convincing evidence. The judge took account of the presumption of validity but this is a case in which the court could, as it did, decide differently from the PTO examiner on the basis of the evidence before the court.

Because a finding of anticipation by the disclosure of the Aokage patent is sufficient to justify the judgment, it is unnecessary to decide the issue of whether the Subera patents were also anticipated by the Japanese printed publications.[7]

■ We also have before us the issue of whether the Aokage patent was prior art within the meaning of 35 U.S.C. § 102. The district court decided on two separate and independent grounds that the Aokage patent was such prior art. One basis was Tyler's admission of the Aokage reference as prior art before the PTO during the prosecution of the '922 Subera patent. The court found that, in a wrap-up amendment, the Tyler attorney admitted in his discussion as to "all the claims" of the three Subera applications, that "[t]he most pertinent available *prior art* known to the Applicants and their representatives is the Aokage U.S. Patent 4,026,121 cited by the Examiner" (emphasis added). In view of this explicit admission, the district court's decision was proper and was sufficiently based on clear and convincing evidence. The controlling case law in this court recognizes this principle. *See Aktiebolaget Karlstads Mekanisk Werstad v. ITC,* 705 F.2d 1565, 1574, 217 USPQ 865, 871 (Fed. Cir.1983); *In re Fout,* 675 F.2d 297, 300, 213 USPQ 532, 536 (CCPA 1982), and *In re Nomiya,* 509 F.2d 566, 571, 184 USPQ 607, 612 (CCPA 1975). Thus, we must affirm the court's decision that the Aokage patent was prior art and as such binding on Tyler. (Here again, we do not pass on the other grounds on which the court concluded that the Aokage was prior art within the meaning of 35 U.S.C. § 102.)

### III. *Infringement*

Having determined that the district court properly found that the Subera patents were anticipated by the Aokage patent, we focus now on the final issue before us. That is whether the district court clearly erred in its factual finding that the Tyler display cases infringed the Aokage patent. The district court correctly reasoned (un-

7. At the 10th Japan Self-Service Association Show and the Third Tohoku Exhibition Show held on March 3–6 and April 9–11, 1976, respectively, the subject matter of the Aokage patent was fully disclosed by means of a large photoprint drawing display panel and a related printed description panel. Copies of hand-printed and off-set printed brochures describing the invention were widely available at the shows. The shows were held in Japan. These three Japanese printed publications were held by the district court to bar the Subera patent under 35 U.S.C. § 102(b).

less there was a specific contrary argument) that

> [b]ecause th[e] court has already found that the inventions set forth in the pertinent claims of the Aokage and Subera patents perform the same function and are indistinguishable, it follows that Tyler's display cases based on the invalid Subera patents infringe the claims of the valid Aokage patent.

*Tyler Refrigeration Corp. v. Kysor Industrial Corp., supra,* at 606, 218 USPQ at 504. In disputing infringement, Tyler argued specifically that, unlike claims 3 and 6 of the Aokage reference,[8] short-circuiting of the air from the primary band to the middle band does not exist in the Tyler cases. The court, however, found credible evidence to the contrary. First, Tyler's witness, Mr. Ibrahim, testified on cross-examination that there was indeed short-circuiting of a portion of the air injected from the primary band in the Tyler cases. Secondly, Dr. Sterling Beckwith, qualified as a person skilled in the art, testified that he examined the Tyler display cases by conducting smoke tests to determine if short-circuiting occurred. Although the exact amount was not measured, Dr. Beckwith concluded that some of the air flowing from the primary conduit in the cases was in fact sucked into the secondary conduit. Finally, video tapes submitted by Tyler and viewed by the district court provided it with physical evidence that short-circuiting occurred in the Tyler cases on defrost. These findings were not clearly erroneous.[9]

A factual finding of infringement must be "based on the preponderance of evidence." *SSIH Equipment, S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365, 376, 218 USPQ 678, 688 (Fed.Cir.

1983). The district court, in finding that Kysor met its burden of proving that the Tyler display cases infringed claims 3 and 6 of the Aokage patent, followed that standard. Infringement is a factual determination which "will not be disturbed on appeal unless clearly erroneous," *Wolens v. F.W. Woolworth Co.,* 703 F.2d 983, 987, 218 USPQ 100, 104 (7th Cir.1983), and, finding no clear error, we must also affirm the district court's infringement decision.

### Conclusion

The district court correctly concluded that the defendant Kysor has met its burden in proving that the Subera patents were invalid as being anticipated by the Aokage patent under 35 U.S.C. § 102, and that the Tyler display cases infringed the Aokage patent.

AFFIRMED.

---

8. Claims 3 and 6 provide, in pertinent part operating said second air circulation means in the direction reverse to that in normal cooling operation thereby to cause a portion of air in said second passage to flow out of said suction inlet thereof and be immediately sucked in short-circuited flow into said suction inlet of said first passage and portions of air in said first and third passages to flow out of respective ejection nozzles thereof and be immediately sucked in short-circuited flow into said ejection nozzle of said second passage and

thereby to draw warm outside air into said passages to accomplish defrosting.

9. The Supreme Court recently made clear that the "clearly erroneous" standard applies, not only to credibility determinations, but also to district court factual findings based "on physical or documentary evidence or inferences from other facts." *Anderson v. City of Bessemer City, North Carolina,* —— U.S. ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).