713 F.2d 760
 218 U.S.P.Q. 781
 Peter Gabor KALMAN, Appellee,
v.
KIMBERLY-CLARK CORPORATION, Appellant.
 Appeal No. 83-540.
 United States Court of Appeals,
Federal Circuit.
 July 19, 1983.
 
 Leonard J. Santisi, New York City, argued for appellant. With him on the brief was Gerald T. Bodner, New York City, of counsel.
 I. Irving Silverman, Chicago, Ill., argued for appellee. With him on the brief were Myron C. Cass and Lawrence J. Bassuk, Chicago, Ill.
 Before RICH, DAVIS, BENNETT, SMITH and NIES, Circuit Judges.
 RICH, Circuit Judge.
 
 
 1
 This appeal is from the September 17, 1982, judgment of the District Court for the Eastern District of Wisconsin, sitting without a jury, holding claims 1, 3, 15, 18, 20, 23, and 25 of appellee Kalman's U.S. Patent No. 3,471,017, issued October 7, 1969, entitled "Filtering Process and Apparatus," valid and infringed by appellant Kimberly-Clark Corp. ("KC"). 561 F.Supp. 628. We affirm.
 
 Background
 1. The Invention
 
 2
 The Kalman patent describes and claims a process and apparatus for filtering a heat-softened substance, for example, a thermoplastic, by introducing a filter ribbon across a passage through which the substance flows. Figs. 1 and 2 of the patent are here reproduced.NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 3
 Important to the device are sealing ports 3 and 4 where, through control of heaters 6, 7, 10, and 11, and water cooling channels 8, 9, 12, and 13, the temperature is kept within a lower range than that of the enclosure containing the hot plastics melt so that "the quantities of rigid and semi-rigid plastics material situated within the channels of these ports act as self replacing sealing plugs at the entry and exit zones of the filter ribbon." The filter ribbon or screen is shown at 1. The filtering device is for use in plastics extruders between the feed screw or ram and the outlet die.
 
 
 4
 A significant feature of the invention is that the extrusion process need not, as with some prior devices, be interrupted to change filters. Nor does it utilize methods such as redirecting flow or incorporation of two filters on a slide to be reciprocated as one filter becomes clogged or damaged. The patent describes two primary methods of advancing the filter ribbon, which rests against and is supported by breaker plate 17, continuous and intermittent. The filter may be
 
 
 5
 * * * forwarded through the filtering enclosure in steps by periodically shutting off the water supply to ports 3 and 4 by means of a valve, not shown, and by raising the temperatures of these ports by means of the cartridge heaters * * *. As the outer skins of the substantially solid plastics plugs within ports 3 and 4 gradually soften ribbon 1 becomes free to move. Since the cross-sectional area of exit slot 15 is larger than that of inlet slot 14 and since both plugs are still keyed onto ribbon 1 a net hydrostatic force exists which forwards ribbon 1 in the direction of arrow c together with the two plugs.
 
 Continuing, Kalman emphasizes that it
 
 6
 * * * will be ready [sic] seen by those skilled in the art that the invention lends itself also to continuous rather than periodic operation; in this method of operating the invention ports 3 and 4 are maintained at intermediate temperatures which facilitate the required slow but continuous forwarding of ribbon 1 through the apparatus.
 
 
 7
 Kalman also notes that "Economy in the consumption of filter cloth may be achieved by using an endless, recirculating filter ribbon loop; the impurities are filtered out as in the preceding embodiments of the invention and the surrounding solidified plastics material forming the sleeve 22 may be continuously removed, together with the entrapped impurities for example by melting or by solvent extraction."Kalman concludes that
 
 
 8
 * * * the essential feature of the invention [is] that the filter is provided in the form of an extended ribbon which passes through a filtering enclosure sealed by partially or fully solidified end plugs formed of the material which is being filtered. Replacement of the clogged filter areas and removal of the impurities from the stream of the material being filtered is achieved by a substantially transverse movement of the filter ribbon. This may most simply be brought about by utilizing the hydrostatic pressure present in extruders but may also be caused, enhanced or retarded by direct mechanical pull at either end of the ribbon.
 
 
 9
 The claims in issue read as follows (paragraphing of steps or elements as used in KC's stipulation):
 
 
 10
 1. A process for filtering a heat-softened substance flowing through a passage comprising the steps of
 
 
 11
 introducing a filter in the form of a filter band or ribbon by passing it through inlet and outlet ports flanking said passage so that a part of the filter extends across said passage,
 
 
 12
 forcing the substance through the filter part to filter said substance whilst providing temperature conditions at said inlet and outlet ports resulting in the formation within said ports of sealing plugs of said substance of adequate rigidity to prevent substantial leakage at said ports, and, when desired,
 
 
 13
 effecting movement of said filter through said ports under conditions providing for self-maintenance of said sealing plugs to introduce another part of said filter band or ribbon into said passage.
 
 
 14
 3. A process as claimed in claim 1 wherein movement of said filter is effected intermittently.
 
 
 15
 15. A process as claimed in claim 1 in which said substance is a heat-softened plastics material.
 
 
 16
 18. A filtering device, for filtering a heat-softened substance, including
 
 
 17
 A body defining a passage through which said substance can be caused to flow and slotted inlet and outlet ports flanking said passage through which a filter in the form of a band or ribbon is passed and can be moved to introduce different parts of said filter across said passage,
 
 
 18
 said ports being adapted for the formation therein, in use, of sealing plugs of the substance being filtered permitting movement of said filter through said slots without substantial leakage of said substance, and
 
 
 19
 means to provide temperature conditions at said ports to form said plugs.
 
 
 20
 20. A filtering device as claimed in claim 18 wherein each slotted port defines an extended channel through which said filter passes.
 
 
 21
 23. A filtering device as claimed in claim 20 including means for controlling the temperature of each port.
 
 
 22
 25. A filtering device as claimed in claim 20 wherein the channel of at least one of said ports is parallel sided over at least part of its length.
 
 2. The Accused Infringing Devices
 
 23
 The accused infringing devices are Berlyn Continuous Filters Model Nos. CF3539 and CF4549, purchased and installed by KC in 1977. These devices, one of which is depicted below, are essentially identical and differ only in size. They use a hydraulic ram to incrementally push a series of three interlocked filter plates across the extrusion passage. The Berlyn brochure states that "each filter plate has rectangular recesses into which the actual filters are placed. The filters rest against a breaker plate carefully perforated to allow the passage of polymer through the entire arrangement with an absolute minimum drop in pressure."NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 24
 A simplified visual comparison of the patented and accused infringing screen changers is provided by an attorney's sketches reproduced below, patented changer at the top, accused Berlyn structure at the bottom, the latter employing the interlocking filter plates shown above pushed through the unit from right to left by the ram.NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 3. The Prior Art
 
 25
 The principal prior art reference relied upon, which is not listed in the Kalman patent, is U.S. Patent No. 3,112,525, issued December 3, 1963, to Moziek for an "Apparatus for Extruding Thermoplastic Material." The patent describes an extrusion device that utilizes single slidable cartridge filter assemblies each of which consists of a perforated screen holder, a screen, and a ribbed screen retainer. The filter is said to be changed without interrupting extrusion, but changing is done by opening valve means located on either side of the filter receiving passage and inserting a fresh filter cartridge, which pushes the clogged filter cartridge out through the opposite valve means. The Moziek device is shown below, 32 being the slidable cartridge assembly and 36a and 36b the rotatable valves:NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 Moziek states that
 
 26
 The tendency of most thermoplastic materials to leak past the valve means is generally dependent on the fluid viscosity of the thermoplastic material at the temperature of the extrusion. For materials of low fluid viscosity, it has been found that leakage can be further reduced by supplemental cooling of the valves. This may be most conveniently done by hollowing or jacketing portions of the valve means to permit circulation of a cooling medium.
 
 
 27
 Garrahan, U.S. Patent No. 1,195,576, issued August 22, 1916, describes and claims a "Rubber-Reclaiming Machine." The "invention relates to means for straining scrap rubber and the like materials to remove therefrom foreign bodies, such as metal, wood, stone or other hard pieces or particles that have been incorporated therein in the previous uses to which the material may have been put." The patent shows a long filter plate m extending out of the filtering device. This construction, shown below, enables the operator to move the strainer "from time to time so as to shift one part of the straining area out of the straining position and another into straining position to enable cleaning of the former while the straining operation proceeds uninterrupted." Movement is accomplished through attached screw z.NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 28
 U.S. Patent No. 3,007,199, issued November 7, 1961, to Curtis for an "Extruding Head Filter," discloses a slide screen changer which has "a plurality of filter screens within a plastics extrusion machine arranged in a manner so that the screens may be alternately placed into operation very quickly by hydraulic means so that one of the screens is always in operation while the other is exposed to permit cleaning."
 
 
 29
 KC maintains that the pertinent teaching of Lodge patent No. 2,507,311, issued May 9, 1950, for a "Strainer," is "the use of long bands or ribbons of filter screen material 30, 31, and 32 from rolls 33, 34 and 35." Kalman emphasizes that "the machine disclosed by Lodge must be shut down to effect a screen change." Below is Fig. 1 from Lodge showing the strainer as part of a tubing extruder.
 
 
 30
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 31
 KC states that patents to Joukainen, Welt, Thomas, and Lehner were cited "merely to show that the thermoplastic working art recognized one could use cooling to make a thermoplastic material or a heat-softenable material act as a seal when it is solidified by cooling." Emphasizing that the patents disclose rotary screw extruders or rotary pumps for plastic material, Kalman counters that "none of these four patents discloses or suggests that the plastic material can form seals by being solidified, for any purpose, and certainly not for sealing filter members."
 
 4. Proceedings in the District Court
 
 32
 Without waiving any of its defenses respecting validity, KC stipulated that the asserted claims "read on" the accused infringing devices, but for the limitations in claims 1 and 18 which speak of a filter "in the form of a band or ribbon." Since all other claims depend from 1 or 18, this limitation is common to all claims in suit. On his motion for summary judgment on both validity and infringement, Kalman presented the affidavits of two experts, both of whom concluded that both the Kalman and Berlyn devices have a band of filter material. Kalman also presented the testimony of three KC employees, two of whom seemed to accept Kalman's attorney's suggestion that the accused screen structure was like "a train of screen pieces" connected end to end moving through the apparatus. The other employee agreed to characterize it as "one long plate," or "like a band of filter material along the entire length of this plate, but for [the] dividers." Because KC presented "no affidavits or other documents which controvert this testimony," the court concluded "that no facts are in dispute on the issue of the band or ribbon." The court also concluded that "the filters used in the Berlyn device are equivalents of those described in the patent," and granted in part Kalman's motion for summary judgment, ruling that the Kalman patent was infringed but declining to rule on its validity. 215 USPQ 158 (E.D.Wis.1981). The conclusion of equivalence is not challenged on appeal.
 
 
 33
 Because the district court felt that KC's arguments regarding validity presented genuine issues of material fact for trial, the court denied the remainder of Kalman's motion. In addition to arguing that the Moziek patent casts doubt on the validity of the claims in suit, KC asserted that the "effecting movement" language of claim 1 "must be interpreted as being the type of movement for the filterscreen which relies on a differential pressure acting on the plugs formed in the filter inlet and outlet ports to impart movement to the filterscreen device." If the claim is not so limited, KC argued, it is invalid over the prior art; if it is so limited, KC asserts that there is no infringement.
 
 
 34
 After a four-day trial, the district court found all claims directly infringed by the Berlyn devices:
 
 
 35
 These claims contain no reference to movement of the filter by hydrostatic pressure. Method claim 1 refers merely to "effecting movement" of the filter. When one looks to other claims, it becomes clear that "effecting movement" in claim 1 does not refer to one means of moving the filter. Alternate means of effecting movement are set forth in claims 5, 6, and 7. Claim 7 states that a "tractive force" may be applied to the filter to effect intermittent movement of the filter. I read claim 7, as does plaintiff, to mean that a tractive force alone may be used to move the filter.
 
 
 36
 The court emphasized that "the Berlyn devices must be compared to the claims of the Kalman patent, not to a preferred, in this case, more sophisticated embodiment as described in the specification." In conclusion, the court commented on the manner in which the Berlyn devices advance the filter assembly:
 
 
 37
 That the Berlyn devices push rather than pull the filter is not a difference of enough significance to escape the charge of infringement. Defendant's employee * * * testified during his deposition that it makes no difference in the Berlyn device whether the filter trays are pushed or pulled.
 
 
 38
 Turning to the issue of validity, the court noted that Moziek only
 
 
 39
 * * * discloses a variation on the screen changer method of filtering plastic. It does not call for continuous movement of the filter; rather, as in screen changers, the change is done all at once--that is, an entire new filter is placed across the flow. Furthermore, Moziek makes no provision for a band or ribbon or any length of filter. Rather, as is typical for screen changers, two filters are called for--one being used, one being cleaned. Although Moziek teaches that the valves can be cooled to prevent leakage, the theory of the cooling is different from that in the Kalman patent. In Moziek, leakage is primarily prevented by using closely fitting metal parts. The cooling helps prevent leakage past the valves. This is vastly different from relying on the plastic itself, as in Kalman, to form plugs.
 
 
 40
 Characterizing Moziek as disclosing a sliding "screen changer" method while "the essence of the Kalman invention is the continuous filter," the court concluded that "The Moziek patent falls far short of anticipating the Kalman patent [sic, claimed invention] under 35 U.S.C. § 102. * * * Moziek, as written, does not teach what Kalman does." Because "specific problems not provided for by the prior art" are solved by Kalman, for example, "prevention of leakage; continuous filtering; and maintenance of constant temperature and pressure in the plastic upstream," the court also concluded that the claimed invention meets the requirement of nonobviousness under 35 U.S.C. § 103.
 
 
 41
 5. Arguments on Appeal.
 
 
 42
 KC argues that the district court gave the claims in issue too narrow a scope and that, properly construed, each is invalid under 35 U.S.C. §§ 102(a), 102(b), 102(e), and/or 102(g) in view of Moziek. KC also asserts that the claims are invalid under 35 U.S.C. § 102(a) (known or used by others in this country before Kalman's date of invention) in view of evidence which shows that prior to "the effective date of invention of the Kalman patent [sic, invention], Monsanto built and operated a number of filter devices corresponding to the disclosure of the Moziek patent."
 
 
 43
 Averring that all claims are also invalid under 35 U.S.C. § 103, KC states that, following its anticipation analysis, "it is clear that very little, if any, differences exist between the prior art Moziek patent and the claims at issue. The only difference is that the same filter band of the Moziek device is not in both the inlet and outlet ports at the same time. Dean Fischer [KC's expert] testified that the Kalman patent claims do not require that this be so." KC suggests that additional expert testimony compels the conclusion that the claimed invention would have been obvious within the meaning of § 103 in view of Moziek taken with Garrahan, and that it was error for the court both to discard Garrahan as a relevant reference and to ignore that testimony. Moreover,
 
 
 44
 the recognition in the Curtis patent of supplying cooling coils along with the recognition that seals may be formed by cooling thermoplastic material as shown by the Joukainen et al, Welt, Thomas and Lehner patents indicates that the level of ordinary skill in this art clearly recognized the formation of seals by chilling of a hot thermoplastic.
 
 
 45
 KC concludes its arguments on validity by emphasizing that the court erred in dismissing Moziek on its belief that "the filter does not move continuously" and that "leakage of plastic is to be minimized, not used as self-sealing plugs." KC contends that the claims do not require continuous movement and that they only require prevention of substantial leakage. Further, it is argued, "if Moziek is discounted because leakage is primarily prevented by using closely fitting metal parts, that is precisely what the Berlyn device uses as well. * * * If Moziek is discounted because the major portion of the slot is filled with the filter cartridge assembly, why shouldn't this distinction apply to the accused Berlyn device which utilizes this concept to a greater degree?"
 
 
 46
 Arguing that "Mere application of claim phraseology or a word by word correspondence is not alone enough to establish infringement"; that "the language of the claim must be read in light of the specification and the file wrapper"; that the "monopoly granted to the inventor can never be broader than the invention disclosed to the public"; and that a specification or its prosecution history "may not be used to enlarge the claim," KC contends that analysis of the actual invention Kalman regards as his "leads inescapably to the conclusion that the invention disclosed, relative to the advancement of the filter when it is desired to effect a screen change, is the concept of utilizing the internal hydrostatic pressure differential in some manner." Thus construed, KC contends the claims are not infringed. If the claims are not so construed, KC maintains here--as it did before the district court--they are invalid.
 
 
 47
 Kalman asserts that resolution of the issues of infringement and validity revolve around the scope of the claims, specifically, whether they must be read to include an unwritten limitation that requires movement of the filter by differential hydrostatic pressure. Noting that KC has not shown any of the findings of the district court, including infringement, to be clearly erroneous, Kalman maintains that the court correctly answered this question in the negative, saying that the Kalman claims in issue "contain no reference to movement of the filter by hydrostatic pressure."
 
 Jurisdiction
 
 48
 Our subject matter jurisdiction over this appeal is provided by section 127(a) of the Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, 96 Stat. 25, which gives this court exclusive jurisdiction of appeals from final decisions of the federal district courts if the subject matter jurisdiction of the district court was based, in whole or in part, on 28 U.S.C. § 1338(a), with exceptions not relevant here. 28 U.S.C. § 1295(a)(1) (1983). The district court's jurisdiction was so based.
 
 OPINION
 1. Infringement
 
 49
 As noted above, on Kalman's motion for summary judgment, KC failed to introduce any evidence to rebut the affidavits submitted in support of Kalman's position on the meaning of the only claim language left in dispute by the parties' stipulation regarding literal infringement. Accordingly, the district court granted the motion with respect to this issue, stating that "the linked filters in the Berlyn continuous filter devices are equivalents of the 'band or ribbon' described in the patent." It also correctly noted that because of this holding, if the claims are not read as KC wishes, it "has in effect admitted that it has infringed the patent."
 
 
 50
 KC argues that, in light of the Kalman disclosure, the independent claims must be read as limited to a process and apparatus which "[effect] movement" of a filter band or ribbon by differential hydrostatic pressure. The district court properly rejected this contention, for dependent claims 2 and 33 (not in issue) contain that very limitation,[1] and it is settled and proper law that "Where some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad whether to avoid invalidity or to escape infringement." Deere & Co. v. International Harvester Co., 658 F.2d 1137, 1141, 211 USPQ 11, 16 (7th Cir.1981); Cameron Iron Works, Inc. v. Stekoll, 242 F.2d 17, 21, 112 USPQ 411, 415 (5th Cir.1957) (cases cited); Western States Machine Co. v. S.S. Hepworth Co., 147 F.2d 345, 350, 64 USPQ 141, 146 (2d Cir.1945) (cases cited). See Maccarone v. Pincus & Tobias, Inc., 11 F.Supp. 248, 251, 27 USPQ 104, 106-07 (E.D.N.Y.1935), aff'd mem., 82 F.2d 1015 (2d Cir.1936).
 
 
 51
 Because the accused devices fall within the scope of the asserted claims, as interpreted, the district court's factual finding of identity of "invention," a question "chiefly to be determined by comparison of the two [inventions]," was not clearly erroneous. See Coupe v. Royer, 155 U.S. 565, 579, 15 S.Ct. 199, 205, 39 L.Ed. 263 (1895), (The Court there adopted the words of Prof. William C. Robinson's classic "work on Patents," (The Law of Patents for Useful Inventions (1890) Vol. 3, p. 378) wherein he stated that where the defendant "denies that the invention used by the defendant is identical with that included in the plaintiff's patent, the court defines the patented invention as indicated by the language of the Claims; the jury judge whether the invention so defined covers the art or article employed by the defendant."). Indeed, the stipulation by the parties, coupled with KC's failure to counter Kalman's affidavits and evidence submitted in his motion for summary judgment, dictated the conclusion of the district court.
 
 
 52
 Nevertheless, KC argues that "despite literal readability of the asserted claim language on the Berlyn filter process and device," there can be no infringement under the law because "there is no infringement of the true spirit and scope of the invention made by Kalman," citing Autogiro Co. v. United States, 384 F.2d 391, 155 USPQ 697 (Ct.Cl.1967).
 
 
 53
 We do not agree. Because application of "reverse equivalents" is a legal question, we conclude on this record, as a matter of law, that the Berlyn devices do the same work, in substantially the same way, to accomplish substantially the same result. Id. at 399-400, 155 USPQ at 704. While a Berlyn brochure declares that its devices represent an improvement over the Kalman invention, we cannot say that Berlyn "has so far changed the principle of the device that the claims of the patent, literally construed, have ceased to represent [Kalman's] actual invention." Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 568, 18 S.Ct. 707, 722, 42 L.Ed. 1136 (1898).
 
 
 54
 Because KC has not separately argued any claims, we affirm the finding of the district court that all asserted claims are infringed. This brings us to the remaining issue of validity.
 
 2. Validity
 
 55
 Again, KC's principal argument is that the Kalman invention, as defined in the claims in suit, is anticipated by Moziek[2] if the "effecting" and "permitting" movement language of claims 1 and 18 is not "interpreted as being the type of movement for the filterscreen which relies on a differential pressure acting on the plugs formed in the filter inlet and outlet ports to impart movement to the filterscreen device." We have stated above that such limitation may not be "read into" the claims. Hence our only remaining task is review of the district court's determination that the claims in issue are neither anticipated by Moziek, nor rendered obvious, within the meaning of 35 U.S.C. § 103, by the teachings of any combination of prior art references presented by KC.
 
 
 56
 a. Anticipation
 
 
 57
 A party asserting that a patent claim is anticipated under 35 U.S.C. § 102 must demonstrate, among other things, identity of invention. In cases like this, identity of invention is a question of fact, e.g., Coupe v. Royer, supra, 155 U.S. at 578-79, 15 S.Ct. at 204-05, and one who seeks such a finding must show that each element of the claim in issue is found, either expressly described or under principles of inherency, in a single prior art reference, or that the claimed invention was previously known or embodied in a single prior art device or practice. Preliminary to this determination, of course, is construction of the claims to determine their meaning in light of the specification and prosecution history, which construction is a matter of law for the court.
 
 
 58
 Although the claims make no mention of continuous movement of the filter, the district court distinguished the claimed invention from Moziek on the basis that that reference
 
 
 59
 * * * discloses a variation on the screen changer method of filtering plastic. It does not call for continuous movement of the filter; rather, as in screen changers, the change is done all at once--that is, an entire new filter is placed across the flow.
 
 The court continued:
 
 60
 Although Moziek teaches that the valves can be cooled to prevent leakage, the theory of the cooling is different from that in the Kalman patent. In Moziek, leakage is primarily prevented by using closely fitting metal parts. The cooling helps prevent leakage past the valves. This is vastly different from relying on the plastic itself, as in Kalman, to form plugs.
 
 
 61
 Accordingly, after consideration of the Kalman and Moziek inventions, the district court concluded that "The Moziek patent falls far short of anticipating the Kalman patent," for the reason that "Moziek, as written, does not teach what Kalman does." (Emphasis ours.) Citing Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 436 F.2d 1180, 1182-83 (7th Cir.1971), the district court had previously emphasized that "To be an anticipation a prior patent must include all the teachings necessary to accomplish what the allegedly invalid patent succeeds in doing." (Emphasis ours.)
 
 
 62
 This was a somewhat incorrect analysis of the law of anticipation, which requires that a distinction be made between the invention described or taught and the invention claimed. The law of anticipation does not require that the reference "teach" what the subject patent teaches. Assuming that a reference is properly "prior art," it is only necessary that the claims under attack, as construed by the court, "read on" something disclosed in the reference, i.e., all limitations of the claim are found in the reference, or "fully met" by it.
 
 
 63
 While the court erred in stating that Moziek must, to anticipate, disclose the same invention as that described by Kalman, it still found that one element of the claimed invention was not disclosed in Moziek, which is enough. The court concluded that "Moziek makes no provision for a band or ribbon or any length of filter." KC has not persuaded us that this finding was erroneous. Our study of the Moziek patent confirms it.
 
 
 64
 The district court properly concluded that, while the interlocking multiple cartridge assembly found in the alleged infringing Berlyn device is, as the court had previously held on motion for summary judgment (215 USPQ at 162), equivalent to a "filter band or ribbon," the single cartridge assembly found in Moziek is not. In attempted refutation, KC points only to the following inconclusive statement made by its expert at the trial:
 
 
 65
 Well, I believe that the, that through the carriage in Moziek with the screen in the, is in the form of a band or ribbon.
 
 
 66
 Given the district court's summary judgment conclusion on the interpretation of "band or ribbon," we are unable to find clear error in the court's decision that KC did not sustain its burden of demonstrating anticipation.
 
 
 67
 b. Obviousness
 
 
 68
 The district court began its discussion of obviousness by noting the three inquiries mandated by Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966), which inquiries are simply those required by the statute itself, 35 U.S.C. § 103.
 
 
 69
 With respect to the scope and content of the prior art, the court concluded
 
 
 70
 * * * that the prior art shows variations and incremental improvements on the slide screen changer for filtering thermoplastics and includes various forms of continuous filters for other media which are somewhat easier to handle than thermoplastics. However, none of the prior art reveals a way to use a continuous filter with plastics. Specific problems not provided for by the prior art include, for instance, the problem of how to prevent leakage at the inlet and outlet ports. The step forward taken by Kalman solves several problems at once: prevention of leakage; continuous filtering; and maintenance of constant temperature and pressure in the plastic upstream.
 
 
 71
 The court next said that the level of skill in the art is determined in a number of ways and quoted the following from Malsbary Mfg. Co. v. Ald, Inc., 447 F.2d 809, 811, 171 USPQ 7, 8 (7th Cir.1971):
 
 
 72
 * * * the usual way of determining such level is by referring to the subjective reaction of a person thoroughly familiar with the particular art and, if possible, one who practiced the art at the crucial time in question.
 
 
 73
 The court then stated that "Mr. George Pickering, plaintiff's expert, is such a person, and his testimony leads me to conclude that Kalman's invention would not have been obvious to a person of ordinary skill in the art at the time of the invention. Those persons of ordinary skill simply did not see a solution to the problems inherent in filtering plastics." Finally, in support of its determination, the court stated that the "Autoscreen" devices "built under" Kalman's patent "have enjoyed commercial success. Mr. Gerald Berlyn, in fact, attempted to become a licensee for Autoscreens before he built his own machine."
 
 
 74
 Five references are listed in the Kalman patent as having been considered by the examiner. They include patents directed to an oil filter of "the filter press type"; an air filtering means, one object of which is "to provide means for continuously moving a sheet or web of filtering media across an air duct or other passage and of sealing the edges of the same against the passage of unfiltered air and/or other gaseous body"; a continuous filter "useful in the manufacture of paints, enamels, varnishes, lacquers and the like"; an automatic fluid testing mechanism "for periodically depositing on a porous tape samples of solid particles which are filtered from measured quantities of fluids to be analyzed"; and an apparatus for filtering liquid, "and more particularly, to improved apparatus for filtering undesirable matter, impurities and the like from a liquid solvent being used for cleaning material in a dry cleaning operation or process."
 
 
 75
 As the district court pointed out, although the examiner cited the above five patents, he based no rejection on them. Indeed, he allowed the claims as filed except for a few examiner's amendments. 215 USPQ at 159. KC's principal reliance is on the patents of Moziek and Garrahan. Like the district court, we recognize they are more pertinent on the obviousness issue than the art cited by the examiner and must be carefully examined to determine whether KC has sustained the burden placed on it by 35 U.S.C. § 282.[3]
 
 
 76
 The trial court gave extensive consideration to Moziek both on Kalman's motion for summary judgment and again at the trial, heard testimony about it and about a machine allegedly built according to its teachings and even heard testimony from Moziek himself. We agree with the court's appraisal of that reference as a typical screen changer type of machine with no provision for a band or ribbon.
 
 
 77
 With respect to Garrahan, the trial court put it in the same category with Moziek, and we agree. We have one minor point of disagreement which is that Garrahan was further distinguished from Kalman on the ground that it dealt only with straining rubber which the court seemed to exclude, erroneously, from the category of "thermoplastics." It is clear from Garrahan that his rubber was thermoplastic (softening with heat) since he discloses keeping it "as soft as possible during the straining" by heating it. Furthermore, Kalman's own specification refers to the filtration of "Plastics, rubber and other materials which are usually extruded." Nevertheless, the fact remains that Garrahan is no closer prior art than Moziek which specifically deals with straining "plastics."
 
 
 78
 Though there is nothing to show that these two patents were considered by the PTO, the burden of establishing facts to support a conclusion of obviousness in view of the prior art remained on KC. Solder Removal Co. v. International Trade Commission, 82 F.2d 628, 632-33, 199 USPQ 129, 132-33 (CCPA 1978).
 
 
 79
 KC points to its cross examination of Kalman's expert, and argues that his testimony reveals that "It would be obvious to combine the teaching of Garrahan, that a long filter plate extending out of a filter device could be used, with the device disclosed by Moziek." The following exchange is relied upon:
 
 
 80
 Q. So, if I saw the device I had constructed [a Moziek-type device] worked without leaking and I saw Garrahan, could I say why can't I use Mr. Garrahan's teaching with a device that Mr. Moziek taught me to build, because I know it would work?
 
 
 81
 A. What is Mr. Garrahan's teaching that you're postulating?
 
 
 82
 Q. Use of a long filter band that extends out--out of my extruder pad or my screen changer body.
 
 
 83
 A. All right.
 
 
 84
 Q. Would that be a fair combination of the teachings of Garrahan and Moziek?
 
 
 85
 A. Well, yes, I'd say so. This is a slide changer, and that's a slide changer. Why not use this instead of that.
 
 
 86
 In other words, KC's argument is that it would have been obvious within the meaning of 35 U.S.C. § 103 to open the valves of the Moziek device, leave them open, and combine it with the so-called "long filter band," which is not very long, that extends through Garrahan to arrive at Kalman's claimed devices and processes. With respect to the sealing plug claim limitations, KC suggests that the prior art "indicates that the level of ordinary skill in this art clearly recognized the formation of seals by chilling of a hot thermoplastic."
 
 
 87
 We cannot agree, however, that this is sufficient to defeat Kalman's claims. KC's arguments are directed to various hypothetical combinations of prior art features and amount to nothing more than hindsight reconstructions. They fail to focus on other evidence respecting the nonobviousness of Kalman's claimed invention.
 
 
 88
 The district court found, based upon testimony given at trial, that several long-standing problems were solved by Kalman. At that time, the court concluded, "those persons of ordinary skill simply did not see a solution to the problems inherent in filtering plastics." Although KC responds that "None of these elements form a part of the claimed Kalman invention," it has not established that these advantageous results are not attributes of (i.e., that they have no nexus to) the claimed invention, which resides in a combination of steps or elements. Accordingly, we hold none of the findings of the district court to be clearly erroneous. Its decision holding that the claims in suit have been infringed by KC and that KC has failed to sustain its burden to show them invalid is affirmed.
 
 
 89
 AFFIRMED.
 
 
 
 [1]
 Claim 2, which depends from claim 1, adds the limitation, "wherein the filter band or ribbon is keyed to the sealing plug within the outlet port and wherein the hydrostatic pressure of said substance within said passage acting on said sealing plug within the outlet port is utilised [sic] to move said filter band or ribbon as a result of controlled extrusion of said outlet sealing plug."
 Claim 33, which depends from claims 26 and 18, adds the limitation, "wherein the outlet port presents a greater effective area to said passage than the inlet port to provide a net hydrostatic force for moving said filter through said device."
 
 
 [2]
 Another way of putting it, which means the same thing, is that the claims in suit are anticipated; and "anticipated" means fully met within the meaning of 35 U.S.C. § 102
 
 
 [3]
 The trial court referred to § 282 as shifting the burden of proof to the party attacking validity, which is a mistake. It places it there and there it stays. It may become more or less difficult to sustain as evidence is produced, but the burden never shifts. See Chicago Rawhide Co. v. Crane Packing Co., 523 F.2d 452, 457, 187 USPQ 540, 545 (7th Cir.1975)
 Of course, where the PTO has not considered facts relevant to an issue in suit, there is no reason to give deference to its action in issuing the patent and a court may find those facts controlling in determining whether the burden of proof has been sustained. Id., 523 F.2d at 458, 187 USPQ at 546.