989 F.2d 1201
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Derwood L. RUNION.
 No. 92-1401.
 United States Court of Appeals, Federal Circuit.
 Feb. 1, 1993.
 
 Before NIES, Chief Judge, and ARCHER and CLEVENGER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 Derwood L. Runion appeals from the April 1, 1992 decision of the U.S. Patent and Trademark Office Board of Patent Appeals and Interferences (Board), Appeal No. 92-1011, affirming the examiner's rejection of claims 1, 2, 5, 12, 13, 16 & 21 (the claims) of Runion's patent application No. 07/569,430 as unpatentable under 35 U.S.C. § 102(b) (1988). Because the Board erred in applying the principles of inherency to the allegedly anticipatory reference, we reverse.
 
 
 2
 * This case presents an opportunity to explore certain mysteries of avian oral hygiene. Birds of many species often find it necessary to rub their beaks against abrasive surfaces to control the growth thereof and keep them in trim. Because poultry instinctively peck at each other with their beaks, well-trimmed beaks reduce the likelihood of injury during this pecking process. Poultry, at least, incidentally peck on birds of inferior status, size or age: wherefrom the phrase "pecking order" to describe a hierarchy of social dominance. McGraw-Hill Dictionary of Scientific & Technical Terms 1384 (4th ed. 1989).
 
 
 3
 To address this problem in the poultry industry, Runion filed a patent application on August 15, 1990 relating to a bird feeder with an abrasive surface for controlling bird beak growth during feeding. Representative of the claimed invention, claim 1 reads:
 
 A bird feeder comprising:
 
 4
 a pan for retaining and presenting feed; said pan having a feeding surface to be covered by said feed;
 
 
 5
 said pan having at least one upstanding surface; and abrasive means secured to said at least one upstanding surface for abrading beaks of birds as they feed.
 
 
 6
 Appropriate materials disclosed in the specification for use as the "abrasive means" include sand, corundum (emery board abrasive), or any other non-toxic abrasive. The material is bonded either directly to the surface with an adhesive, or to an intermediary "carrier" layer (e.g., sandpaper), which is then bonded to the feeding surface.
 
 
 7
 During prosecution, the examiner rejected the claims as anticipated under 35 U.S.C. § 102(b) by U.S. Patent No. 1,162,427 entitled "Dough-Loaf Support or Receptacle," and issued to F.J. Wolff on November 30, 1915 (Wolff). Wolff discloses a pan having a horizontal surface and an upstanding peripheral surface. Particles of "vegetable grit" are adhered with shellac to both the horizontal and upstanding surfaces, thereby forming a coating "of a rough or pebbled character." The vegetable grit is described as consisting of "corn flour, meal or grits, or in fact, any cereal containing practically no gluten." Wolff's purpose was to create a surface to which dough would not adhere, so as to ensure ready removal of dough/bread loaves from the receptacle simply "by tilting or overturning the ... receptacle."
 
 
 8
 On appeal, the Board found that "the grit coating of Wolff can perform the function of the claimed abrasive means in that the vegetable grit would inherently abrade the birds' beak[s] as they [feed] from the pan...." The Board concluded that Runion had not rebutted the prima facie allegation of inherency, and therefore affirmed the examiner's rejection of Runion's claims as anticipated by Wolff. Feathers thus ruffled, Runion timely appealed to this court.
 
 II
 
 9
 Anticipation is a question of fact subject to review under the "clearly erroneous" standard. Ralston Purina Co. v. Far-Mar-Co., Inc., 772 F.2d 1570, 1574, 227 USPQ 177, 179 (Fed.Cir.1985). Likewise, what a prior art reference discloses for purposes of determining identity of invention is a question of fact, to be reviewed by this court under the "clearly erroneous" standard. Kalman v. Kimberly-Clark Corp., 713 F.2d 760, 771, 218 USPQ 781, 789 (Fed.Cir.1983), cert. denied, 465 U.S. 1026 (1984), overruled in part on other grounds by SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1125, 227 USPQ 577, 588 (Fed.Cir.1985). "Our review of a finding of anticipation is the same whether it was made by the [B]oard or by a district court." In re King, 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed.Cir.1986).
 
 
 10
 Anticipation under section 35 U.S.C. § 102(b) "is established only when a single prior art reference discloses, either expressly or under the principles of inherency, each and every element of the claimed invention." RCA Corp. v. Applied Digital Data Sys., Inc., 730 F.2d 1440, 1444, 221 USPQ 385, 388 (Fed.Cir.1984). Specifically, section 102(b) reads, in pertinent part:
 
 
 11
 A person shall be entitled to a patent unless--
 
 
 12
 * * *
 
 
 13
 (b) the invention was patented ... in this ... country ..., more than one year prior to the date of the application for patent in the United States[.] ...
 
 
 14
 35 U.S.C. § 102(b). With respect to means-plus-function limitations in a claim, the prior art reference cannot anticipate the claimed invention "[a]bsent structure [in the prior art reference] which is capable of performing the functional limitation of the 'means.' " In re Mott, 557 F.2d 266, 269, 194 USPQ 305, 307 (CCPA 1977).
 
 
 15
 Pursuant to the principles of inherency, characteristics of an invention in a prior art reference that are not explicitly disclosed, but which are nevertheless necessarily inherent therein, may serve to render a claim unpatentable as anticipated:
 
 
 16
 To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled.... [such] that the missing ... matter is necessarily present in the ... reference, and that it would be so recognized by persons of ordinary skill.... "Inherency ... may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient...."
 
 
 17
 Continental Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1268-69, 20 USPQ2d 1746, 1749 (Fed.Cir.1991) (citations omitted) (emphasis added) (quoting In re Oelrich, 666 F.2d 578, 581, 212 USPQ 323, 326 (CCPA 1981)); see also In re King, 801 F.2d at 1326, 231 USPQ at 138 (if a structure in the prior art "necessarily functions in accordance with the limitations of a ... claim of an application, the claim is anticipated." (emphasis added)).
 
 
 18
 Thus, if the crucial property or characteristic of the reference is not necessarily implicit in the reference's disclosure, then the principles of inherency do not apply and a reference without either inherent or explicit disclosure of each and every element of the claim cannot anticipate the claim.
 
 
 19
 In the present case, the Board erred in applying the principles of inherency to the term "grit" rather than to the phrase "vegetable grit," thereby concluding that a prima facie case had been presented. It is undisputed that "grit" as a generic term embodies the abrasive characteristics of an inorganic, pulverized substance, such as sand. However, whether "grit," as the term is commonly used, would be inherently capable of abrading birds' beaks, or whether "vegetable grit" would be inherently capable of performing the functional limitation of the claim are birds of a different feather.
 
 
 20
 We agree with Runion that by divorcing the term "grit" from "vegetable grit," as Runion argues, the Board ignored the elaboration of the term in the specification to include crushed cereal in the form of flour or meal. As a matter of simple logic, if cornmeal were capable of abrading a bird's beak, then a bird would not need to separately abrade its beak on hard or abrasive objects, since abrasion would automatically occur during feeding. Moreover, a surface that is described as having "a rough or pebbled character" need not necessarily be abrasive: "Pebbled" connotes more of an irregularly uneven surface. Webster's Third New Int'l Dictionary 1662 (1968). "Rough" means non-smooth or irregular. Id. at 1977; Oxford Encyclopedic English Dictionary 1258-59 (1991). Neither term necessarily requires such a surface to be abrasive to the point that it would serve to abrade avian bills.
 
 Indeed, Wolff explicitly explains:
 
 21
 It is necessary that the grit shall be of a vegetable character so that should any of it become detached from the coating and adhere to the loaf it will not be noticeable or injurious to the consumer of the loaf when baked.
 
 
 22
 The abrasive means of Runion's claim, e.g., sand, would not fit that description.
 
 
 23
 Finally, an abrasive surface is necessarily highly frictional so as to cause wear of an adjacent surface. Dictionary of Scientific & Technical Terms, supra, at 4. Because Wolff was concerned with ready removal of the dough/bread loaves by "tilting" the receptacle, the "rough or pebbled" surfaces would not necessarily be abrasive, since incorporating high-friction surfaces would impede the removal process. In fact, Wolff would seek to avoid abrasive surfaces because they would interfere with removal of the dough/bread loaves.
 
 
 24
 Runion's claims are not anticipated under section 102(b) because Wolff, the sole recited reference, does not disclose an inherently abrasive surface necessarily capable of abrading birds' beaks. The judgment of the Board is reversed.