996 F.2d 1235
 29 U.S.P.Q.2d 1310
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
GASKA TAPE, INC., Plaintiff-Appellant,
v.
PRES-ON PRODUCTS, INC., Defendant-Appellee.
 No. 92-1271.
 United States Court of Appeals, Federal Circuit.
 May 5, 1993.
 
 Before RICH, MAYER and RADER, Circuit Judges.
 DECISION
 RICH, Circuit Judge.
 
 
 1
 Gaska Tape, Inc. (Gaska) appeals the February 10, 1992 amended judgment of the U.S. District Court for the Northern District of Illinois in a jury case, holding U.S. Patent No. 4,806,404 (Cascino patent) "invalid and of no force and effect" and claims 1-7 thereof not infringed by Pres-On Products, Inc. (Pres-On). Consistent with our discussion below, we affirm.
 
 DISCUSSION
 
 2
 * Claims 1-7 of the Cascino patent, the only claims that Gaska has asserted against Pres-On in this infringement action, are directed to spacer members for positioning between fragile objects during shipment.[1] During trial, Pres-On argued among other things that claims 1-7 are invalid, under 35 U.S.C. §§ 102(b) and 103, as defining obvious subject matter in view of Pres-On's manufacture and sale, more than one year prior to the March 17, 1987 filing date of the application which led to the Cascino patent, of spacer members comprising a base layer of cork or polyethylene having a tack layer thereon of Monosol PC-10-20 foam (Monosol spacers). The jury agreed. On January 10, 1992, as part of a verdict based upon special interrogatories, the jury found
 
 
 3
 by clear and convincing evidence that, in view of the prior sales and use of the prior Pres-On spacer pads with the Monosol foam, the subject matter of [claims 1-7 of the Cascino patent] would have been obvious at the time the alleged invention was made to a person having ordinary skill in the art.
 
 
 4
 Pres-On also argued during trial that the Cascino patent is invalid under 35 U.S.C. § 112 as failing to disclose the best mode of practicing the claimed invention. The jury agreed, answering yes to the following special interrogatory:
 
 
 5
 Do you find by clear and convincing evidence that Mr. Cascino failed to disclose in the specification [of the Cascino patent] the use of a foam [having] a shiny surface, "patent paper", or the use of two plasticizers and that this was his best mode which would result in the invalidity of [the Cascino patent]?
 
 
 6
 The district court adopted both of these findings, as well as the remainder of the jury's special interrogatories, and declared in part that the Cascino patent was "invalid and of no force or effect." The district court issued its amended judgment to this effect on February 10, 1992. On March 2, 1992, the district court denied a motion by Gaska for judgment notwithstanding the verdict or, in the alternative, for a new trial.
 
 
 7
 To succeed in its appeal of the district court's denial of its motion for judgment notwithstanding the verdict, Gaska must show that the record lacks substantial evidence upon which a reasonable jury viewing the evidence as a whole could have found the facts needed to support the verdict in light of the applicable law. Lemelson v. General Mills, Inc., 968 F.2d 1202, 1207, 23 USPQ2d 1284, 1288 (Fed.Cir.1992). This court reviews the denial of a motion for new trial under an abuse of discretion standard. Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1512, 220 USPQ 929, 935 (Fed.Cir.), cert denied, 469 U.S. 871 (1984).
 
 B
 
 8
 Among several arguments that Gaska asserts on appeal, Gaska argues that the jury erred in finding claims 1-7 invalid for obviousness in view of Pres-On's prior manufacture and sale of the Monosol spacers. Gaska further argues that, even assuming that claims 1-7 are prima facie obvious in view of the Monosol spacers, Gaska has demonstrated secondary considerations such as commercial success and long felt need sufficient to rebut such a prima facie case. Finally, Gaska argues that the jury's obviousness finding based upon the Monosol spacers is inconsistent with its infringement findings and that it is the result of inconsistent and prejudicial jury instructions. We disagree with each of these arguments.
 
 
 9
 Obviousness under section 103 is a question of law that this court reviews de novo. Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1379-80, 231 USPQ 81, 90 (Fed.Cir.), cert. denied, 480 U.S. 947 (1987). In the case at bar, there is substantial evidence of record supporting the jury's obviousness determination.
 
 
 10
 The evidence presented during trial establishes, and Gaska does not contest, that Pres-On put on sale and began manufacture of the Monosol spacers more than one year prior to the March 17, 1987 filing date of the application which led to the Cascino patent. The evidence also establishes, and Gaska does not contest, that the Monosol spacers render the claimed invention prima facie obvious, with the possible exception of the quantity of plasticizer incorporated into the tack layer of the claimed spacers. Thus, the obviousness of claims 1-7 turns on whether Pres-On's use of the Monosol PC-10-20 foam in its spacers would have taught or suggested to one of ordinary skill in the art to use the amount of plasticizer claimed by Cascino.
 
 
 11
 It is undisputed that the Monosol PC-10-20 foam produced up to the early part of 1986 contained plasticizer in an amount of approximately 40% by weight. It is also undisputed, and in fact Gaska specifically admits, that the Monosol PC-10-20 foam contained phthalate plasticizer in an amount of approximately 31% by weight. The evidence presented also establishes that Pres-On's Monosol spacers stuck to glass, notwithstanding Gaska's suggestions to the contrary. Clearly, Pres-On's distributors would not have ordered the number of Monosol spacers that they did, if the spacers did not serve their intended function.
 
 
 12
 To determine whether the amount of plasticizer in the Monosol PC-10-20 foam used by Pres-On meets the plasticizer limitations set forth in claims 1-7 of the Cascino patent, we must construe the claims to determine the quantity of plasticizer claimed. Claim construction is a question of law. Kalman v. Kimberly-Clark Corp., 713 F.2d 760, 771, 218 USPQ 781, 789 (Fed.Cir.), cert denied, 465 U.S. 1026 (1984). Under these circumstances, we must determine what is intended by the language "in amounts exceeding the normal quantity" found in claim 1 and by the language "additional organic plasticizer" found in claim 4.
 
 
 13
 To ascertain the intended meaning of disputed claim language, one examines the claims themselves, the specification, and the prosecution history. C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc., 911 F.2d 670, 673, 15 USPQ2d 1540, 1543 (Fed.Cir.1990); Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 866-67, 228 USPQ 90, 93 (Fed.Cir.1985). The specification of the Cascino patent refers to the use of an "excess" amount of plasticizer, which is the same language that Cascino used in the claims as originally filed. Cascino deleted this language and added the language now in the claims in response to a rejection by the Examiner that the claims were indefinite without further definition of what was intended by an "excess" amount. In making this amendment, Cascino stated that the amount of plasticizer needed is "that quantity of plasticizer necessary to render the tack layer capable of adhering to a surface of a fragile object without a separate surface adhesive being necessary."
 
 
 14
 In addition, Cascino testified during trial that one way to determine whether a material contained excess plasticizer would be to foam the material and then see if it stuck to glass. Cascino stated in pertinent part:
 
 
 15
 If it stuck to glass, it had an excess plasticizer. If it didn't, it didn't have an excess plasticizer.
 
 
 16
 Cascino also testified that his patent states that "approximately" 40% plasticizer is an above normal quantity of plasticizer for a foam.
 
 
 17
 Based upon Cascino's testimony and statements made during the prosecution of the Casino application, we believe that a reasonable juror could conclude that a foam contains an "additional" amount of plasticizer or an amount "exceeding the normal quantity," as required by the claims, if it sticks to glass and contains plasticizer in an amount of approximately 40% by weight, as does the Monosol PC-10-20 foam. Therefore, we hold that there is sufficient evidence to support the jury's determination that claims 1-7 of the Cascino patent are invalid as being obvious in view of Pres-On's Monosol spacers.
 
 
 18
 Gaska argues that Cascino did not testify that just any foam which sticks to glass contains excess plasticizer. Rather, according to Gaska, Cascino's testimony was limited solely to how one would determine whether the V-700 foam used by Gaska contained excess plasticizer. Gaska further argues that Cascino's testimony that approximately 40% by weight plasticizer was an above normal amount of plasticizer was limited solely to the particular foam composition described in the Cascino patent. Our review of the record does not indicate that Cascino ever limited his testimony in such a manner, and therefore, we find that a reasonable juror could have interpreted his testimony as applying equally well to other foams.
 
 
 19
 We also find unpersuasive Gaska's arguments that other trial testimony confirmed that Monosol PC-10-20 foam did not contain excess plasticizer.[2] The testimony that Gaska relies upon is that given by Larson, Conley, and Miner, all of whom are present or past employees of Monosol. Larson testified that, in "his line of work," a normal amount of plasticizer in Monosol foams would have been about 80 to about 100 parts of plasticizer per 100 parts of resin. Conley similarly testified that a normal amount of plasticizer for the types of products that Monosol had been making would have been 80 to 100 parts of plasticizer. Larson further testified that Monosol PC-10-20 foams typically contained approximately 90.75 parts of plasticizer per 100 parts of resin.
 
 
 20
 By this testimony, Larson and Conley merely expressed their beliefs as to the amount of plasticizer that Monosol "normally" incorporated into its commercial products with which they were acquainted. Such information has little bearing, if any, on what is an above "normal" amount of plasticizer, for purposes of construing Cascino's claims. In addition, Miner even testified that, to his knowledge, the plasticizer amounts disclosed in the Cascino patent were "normal" amounts. Based on this testimony, a reasonable juror could conclude that the amount of plasticizer "normally" in Monosol's commercial PC-10-20 foams was an above "normal" amount of plasticizer, for purposes of Cascino's claimed invention.
 
 
 21
 In addition, we also find unpersuasive Gaska's arguments that a reasonable juror could not conclude that the Monosol spacers would have rendered obvious the amount of phthalate plasticizer claimed in claim 7. Claim 7 states that the organic plasticizer of claim 4 is "a phthalate based compound and constitutes at least 40% by weight" of the tack layer. Even though the Monosol PC-10-20 foam contained only approximately 31% by weight of a phthalate plasticizer, it did contain approximately 40% by weight plasticizer in total. A juror could reasonably have concluded that it would have been an obvious modification to substitute the remaining approximately 9% non-phthalate plasticizer with a phthalate based plasticizer.
 
 
 22
 Furthermore, a reasonable juror also could conclude that the term "compound" as it is used in the claims should be interpreted broadly as including a "mixture or combination" of plasticizers, and not narrowly as referring only to a single substance made up of two or more elements.[3] Such an interpretation is reasonable given that the only example in the Cascino patent describes the use of 140.0 parts of a phthalate plasticizer in combination with 14.4 parts of a blowing agent plasticizer "mix." At no point in the Cascino patent is the type of plasticizer used in the "mix" described. Therefore, a reasonable juror could conclude that the language "phthalate based compound" encompasses mixtures of plasticizers in which the mixture is predominately made up of a phthalate plasticizer, as is the case with the Monosol PC-10-20 foam.
 
 
 23
 Because the secondary considerations relied upon by Gaska are based upon general, oral testimony that a reasonable juror could have found unpersuasive or not credible, we also uphold the jury's finding that Gaska has failed to demonstrate secondary conditions sufficient to rebut the prima face case of obviousness based upon the Monosol spacers. We also find the jury instructions to be proper when viewed as a whole. Furthermore, to the extent that any error did exist in these instructions, such error was nothing more than harmless error, since Cascino's testimony provided a basis for the jury's decision.
 
 
 24
 Gaska also has failed to establish that the jury's obviousness determination based upon the Monosol spacers is inconsistent with its infringement determinations. The only evidence presented at trial to show the amount of plasticizer in the accused spacers after issuance of the patent, not based on speculation, indicated that the accused spacers had a total plasticizer content of 37.40% by weight. A reasonable juror could conclude that none of claims 1-7 reads, either literally or under the doctrine of equivalents, on this level of plasticizer, while at the same time concluding that the Monosol spacers, containing approximately 31% phthalate plasticizer and 40% total plasticizer, would have rendered claims 1-7 obvious to one of ordinary skill in the art.
 
 
 25
 In view of the foregoing, we hold that Gaska has failed to establish that the district court erred in denying Gaska's motion for judgment notwithstanding the verdict or motion for new trial as to claims 1-7. Accordingly, we affirm the district court's decision holding claims 1-7 invalid.
 
 CONCLUSION
 
 26
 Since only claims 1-7 were sued on and we affirm the trial court holding that all of those claims are invalid, there is no need to consider the question of infringement or any other issue.
 
 
 27
 MAYER, Circuit Judge, dissenting.
 
 
 28
 I would affirm the district court's judgment that claims 1-7 of the Cascino patent were not infringed by Pres-On Products, Inc. There was substantial evidence before the jury for it to conclude that Pres-On's Chrysler foam did not contain "excess" or "additional" plasticizer and thus did not literally infringe claims 1-6. There also was substantial evidence that the Chrysler foam did not contain "at least 40%" phthalate based organic plasticizer by weight as required by claim 7. And there was substantial evidence upon which the jury could have based its finding that there was no infringement under the doctrine of equivalents. Accordingly, the district court did not err in denying Gaska's motions for judgment notwithstanding the verdict and for a new trial. That having resolved the pointed dispute between the parties, I would vacate the district court's advice that the patent is invalid. Vieau v. Japax, Inc., 823 F.2d 1510, 1517, 3 USPQ2d 1094, 1100 (Fed.Cir.1987).
 
 
 
 [1]
 Claims 1-7 are as follows:
 Claim 1 A spacer member adapted to be positioned between fragile objects during shipment, said spacer member comprising a base cushion layer having first and second opposite contacting surfaces, a tack layer bonded to one of said base cushion layer contact surfaces, said tack layer formed of a soft material normally non-adherent to a smooth surface, said tack layer being modified to possess adhesive properties sufficient to adhere to a surface of said fragile object without leaving an appreciable adhesive residue when the spacer is removed, said tack layer formed of a soft plasticized polymeric material having organic plasticizer incorporated therein in amounts exceeding the normal quantity of plasticizer needed to soften said polymeric material.
 Claim 2 The spacer member of claim 1 wherein said base cushion layer is formed of closed cell polyethylene.
 Claim 3 The spacer member of claim 1 wherein said tack layer is formed of one of the group of materials which includes foamable polyvinyl chloride and foamable polyurethane.
 Claim 4 A spacer member for positioning between fragile objects during shipment which leaves no appreciable adhesive residue when removed, said spacer member comprising:
 (a) A first layer of expandable semi-rigid material; and
 (b) A second layer bonded to said first layer wherein said second layer is formed of plasticized polymeric material which includes additional organic plasticizer incorporated therein whereby said second layer is of sufficient tack to adhere to said fragile object without a separate surface adhesive.
 Claim 5 The spacer member of claim 4 wherein said first layer is formed of closed cell polyethylene.
 Claim 6 The spacer member of claim 4 wherein said second layer is formed of one of the group of materials which includes foamable polyvinyl chloride and foamable polyurethane.
 Claim 7 The spacer member of claim 6 wherein said organic plasticizer is a phthalate based compound and constitutes at least 40% by weight of said second layer.
 
 
 [2]
 In addition to the specification and prosecution history, one also may look to expert testimony to determine the meaning of disputed claim language. McGill Inc. v. John Zink Co., 736 F.2d 667, 675, 221 USPQ 944, 950 (Fed.Cir), cert. denied, 469 U.S. 1037 (1984)
 
 
 [3]
 The dictionary definition of "compound" includes broadly "a mixture or combination" of two or more parts, Webster's New World Dictionary 291 (2nd College ed. 1974), and there is nothing in the specification of the Cascino patent indicating that the narrow technical meaning of "compound," i.e., a substance containing two or more elements chemically combined in fixed proportions, was intended