THERMAL ENGINEERING CORPORATION a South Carolina corporation, and Willie H. Best, Plaintiffs,

v.

CLEAN AIR SYSTEMS, INC., a North Carolina corporation; Charles P. Campbell and Bobby Correll, Defendants.

No. ST–C–83–304.

United States District Court, W.D. North Carolina, Statesville Division.

Nov. 6, 1987.

Douglas G. Eisele, Eisele & Ashburn, Statesville, N.C., George M. Hopkins and James F. Vaughn, Newton, Hopkins & Ormsby, Atlanta, Ga., for plaintiffs.

George L. Little, Petree, Stockton, Robinson, Vaughn, Glaze & Maready, Winston–Salem, N.C., Charles Y. Lackey, Phillip S. Banks, III, West, Wood, James & Banks, Winston–Salem, N.C., for defendants.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, District Judge.

The Plaintiffs, Thermal Engineering Corporation and Willie H. Best brought this civil action against the Defendants, Clean Air Systems, Inc., Charles P. Campbell and Bobby Correll seeking injunctive relief, monetary damages and attorney fees for the alleged infringement of the claims of U.S. Patent No. 4,235,023 for a "high heat transfer oven" and the process of drying articles. The Defendants deny infringement and assert the defenses of non-infringement, invalidity, patent misuse, and fraud on the Patent Office.

The matter was heard by the Court and a jury at the June 1987 term of this Court in Statesville, North Carolina but after the close of the evidence the parties informed the Court that they had settled all issues arising in the case except validity of the patent and then stipulated that the Court could determine the validity issue upon the evidence presented to the jury and any additional evidence to be offered. The Court heard the additional evidence and took the matter under advisement. Prior to the filing of findings, conclusions and judgment in the cause the Defendants moved to invalidate the patent based upon additional newly discovered evidence. The Court conducted a hearing on the newly discovered evidence in Asheville, North Carolina on October 15, 1987 and an-

nounced from the bench that the motion would be denied and the patent would be held valid. The Plaintiffs' counsel were invited to file proposed findings and conclusions and defense counsel were allowed seven days after such filing to file objections thereto. The Court now enters its findings and conclusions.

## FINDINGS OF FACT

1. The Plaintiff, Thermal Engineering Corporation (Thermal), is a South Carolina corporation with its principal place of business located in Columbia, South Carolina and the Plaintiff, Willie H. Best, is a resident citizen of South Carolina and the owner of U.S. Patent No. 4,235,023, the patent-in-suit.

2. The Defendant, Clean Air Systems, Inc. (Clean Air), is a North Carolina corporation with its principal place of business located in Statesville, North Carolina and the Defendant, Charles P. Campbell, is a resident citizen of North Carolina and is the president, general manager and majority stockholder of Defendant Clean Air. By stipulation, the Defendant Bobby Correll was dismissed as a party defendant, with prejudice.

3. The accused ovens were manufactured by the Defendants at their plant in Statesville and installed within the Western District of North Carolina and elsewhere in the United States and Canada.

4. The Defendants have admitted that both personal jurisdiction and venue are proper in this Court.

5. The Plaintiff, Willie H. Best filed an application in the United States Patent and Trademark Office on June 16, 1978, for a "High Heat Transfer Oven." On September 28, 1978 he granted an exclusive license to the Plaintiff Thermal under the patent application and under any patent resulting from the application. United States Letters Patent No. 4,235,023 ('023) was issued to the Plaintiff Best on November 25, 1980 for a "High Heat Transfer Oven." The claims of the patent are directed to both the apparatus defined as a high heat transfer oven and a process for drying articles. Since 1978 the Plaintiffs have sold the ovens manufactured in accordance with the claims of the patent under the trademark "Turbulator."

6. The oven disclosed and claimed in the '023 patent comprises a housing having walls and a roof through which objects to be dried are passed. In one embodiment, propeller fans suspended from the roof of the oven discharge air in a turbulent condition directly against the objects to be dried. The path of the air between the fan blades and the objects is essentially unobstructed, and, as shown in the patent, a safety screen may be mounted below the fan. The path of the return air to the back side of the fan blades is also essentially unobstructed. Heating means are disposed generally on about the same plane as the fan blades, and are arranged so as to heat only a portion of the recirculating air returning to the back side of the fan blades. Other embodiments disclosed in the patent teach other locations for the fans and other types of heating means. The objects to be dried are passed by a conveyor along a path through the housing so that successive objects are subjected to the turbulent blasts of air as they pass beneath the fans. In operation, the oven disclosed and claimed in the patent moves large volumes of turbulent air over the surfaces of the objects to be dried with no appreciable back pressure on the fan blades and with great efficiency in the use of power. The paint or other coating on the surfaces are thus heated and dried quite rapidly without damage to the coating.

7. The Plaintiffs filed this action on November 29, 1983, alleging infringement of claims Nos. 1–6, 9, 10, 12, 14, 17, 18, 20–22, 25, 26 and 28–37 of the '023 patent. After an extended period of discovery the Defendants filed in the Patent Office, a request for re-examination of the patent, pursuant to 35 U.S.C.A. Section 302. The request was granted and this litigation was stayed by the Court pending the results of the re-examination. Re-examination Certificate No. 599 for Patent No. '023 was issued by the Patent Office on December 16, 1986. The re-examination certificate confirms the validity of claims Nos. 21 through 25 and

28 through 38, without amendment, and allows the remaining claims with amendment. The stay of this Court was lifted, and the Plaintiffs then filed by leave of this Court a supplemental complaint, updating the pleadings as to the issuance of the re-examination certificate.

8. The Defendant Clean Air was incorporated by the Defendant Campbell in 1977 and sometime thereafter contracted with Broyhill Furniture Company to install approximately 20–30 Turbulator Ovens manufactured by Thermal under license from Best and sold to Broyhill by Thermal. The Defendants obtained blueprints of Thermal's ovens in order to install them for Broyhill. After this successful operation the Defendants began manufacturing and installing their own high heat transfer ovens. The evidence shows that since that time the Defendants have manufactured and sold several types of ovens, the structures of which having slight variations.

9. The apparatus disclosed and claimed in the '023 patent includes the features of: (1) a fan delivering air in a turbulent condition against the object to be dried; (2) an essentially unobstructed path between the fan and the object being dried; (3) recirculating the air in an essentially unobstructed path back to the fan; and (4) heating a portion of the recirculated air. In their claim of infringement against the Defendants the Plaintiffs rely principally upon independent claims 13 and 28 and dependent claims 14, 20, and 29 of the patent. These independent claims are as follows:

Claim 28. An oven for drying coatings on objects passed therethrough comprising:

(a) a housing having walls including opposed side walls and a top wall defining a generally open interior having a longitudinal path of travel through which said objects are passed;

(b) a plurality of fan assemblies arranged in longitudinally spaced relationship along said path of travel, each of said fan assemblies having a rotatable fan with a hub and radially extending blades protruding from said hub, a shaft carrying said hub for rotation about the axis of said shaft and motor means for rotating said shaft, said axis being essentially perpendicular to the blades of said fan and said path of travel for delivering air to said objects, the space between the blades of said fan and said object being essentially unobstructed so that there is substantially no back pressure and said blades deliver air in a turbulent condition directly toward said path to impinge on said objects for providing forced convection heat transfer thereto and for reducing substantially the boundary layer of their coatings, said blades being spaced from said side walls and said top wall sufficiently that a portion of said air in said interior freely passes unobstructed to the back sides of said fans for recirculation; and

(c) heating means for heating another portion of said air for returning to the back sides of said fans

Claim 13. A high turbulence heat transfer oven for drying objects passed along a prescribed path therethrough, comprising:

(a) a housing having an entrance and exit and an interior through which successive objects to be dried are passed along said prescribed path;

(b) a plurality of fans disposed adjacent to said prescribed path and spaced from each other, each of said fans having an air discharge front side and an air intake back side disposed so as to deliver air directly from its air discharge front side in a turbulent condition and in essentially an unobstructed path in a direction toward said prescribed path and against successive objects and then in essentially an unobstructed return path around to the back side of such fan;

(c) heating means for heating only a portion of circulated returning air in said return path to the back side of each of said fans so that a portion of the air which is returned to the back side of such fan is progressively heated and then progressively mixed with the air in the essentially unobstructed path to the back side of said fan for being delivered in a mixed condition by such fan toward said path; and

(d) means for progressively moving said objects through said open interior while said objects are being dried by the air directed against them by said fans.

10. Claim 13 was amended during the re-examination proceeding to require the limitation of "means for progressively moving said objects through" the oven. This limitation, however, was previously taught by Mr. Best in the original '023 patent at column 5, lines 28 through 31, and column 7, lines 1 through 7. This amendment does not substantially change the scope of the claim, since the preamble of claim 13 originally recited that the objects were "passed along a prescribed path" through the oven, and is inherent in the claims that were confirmed without amendment. The validity of claims 21 and 28 was confirmed by the Patent Office without requiring amendment.

11. The claimed process includes the features of: (1) passing objects in a prescribed path; (2) under successive turbulent blasts of air; (3) returning the air to the back sides of the fan in essentially unobstructed paths; (4) heating only a portion of the return air; (5) commingling the heated and return air; and (6) redirecting the commingled air toward the objects. The Plaintiffs claim infringement of the claimed process by reference to independent claim 21, and dependent claims 22–25, the validity of which also was confirmed without amendment by the Patent Office. Independent claim 21 reads as follows:

Claim 21. Process of drying objects comprising:

(a) passing said object successively along a prescribed path of travel through an essentially open interior of a housing;

(b) disposing a plurality of fans in said open interior and in succession adjacent to the path of travel;

(c) directing successive turbulent blasts of air from the front side of said fans toward said path of travel at spaced locations along said path of travel so as to contact each of said objects successively with such turbulent blasts of air during its travel along said path;

(d) directing said air from said turbulent blast as return air in essentially unobstructed open paths in said interior to the back sides of said fans for redirection as blasts of air by said fans;

(e) heating only a portion of the return air after it has been directed toward said path of travel and before said air has reached the back side of each of said fans;

(f) commingling the heated air and the returned air; and

(g) redirecting the commingled air toward said path of travel.

12. Prior to the invention of the oven of the '023 patent by Mr. Best, manufacturers in the furniture, automotive and appliance industries were using various types of ovens to cure the finishes or coatings on objects. These ovens included so-called "hot boxes" which were totally enclosed rooms in which the objects to be dried were placed. These "hot boxes" were heated to a desired temperature by heating air in a location apart from the interior of the oven and delivering the heated air to the interior of the oven by means of ducts, the object being left to bake until the coating was dried. This procedure was time consuming and inefficient.

13. These "hot boxes" were eventually replaced by nozzle-type ovens in which the objects to be dried passed through the nozzle oven, and heated air was delivered onto the objects through openings or "nozzles." This type oven utilizes air ducts or plenums which cause an obstruction and corresponding pressure drop of the recirculated air. Consequently, high horsepower motors, driving centrifugal fans, are needed to force air through the plenums and onto the objects to be dried. At the time of Mr. Best's invention the industries were using increasingly more and more horsepower and more and more energy in an effort to achieve faster drying in nozzle ovens. These ovens occupy large amounts of floor space within the manufacturing plants and those that use conveyors require large length of conveyors which move through the ovens.

14. The evidence is convincing and substantial that the Turbulator Oven described in Patent '023 has achieved considerable commercial success. Testimony from representatives of coating manufacturers and furniture makers indicate that Plaintiffs' Turbulator brand ovens dry objects many times faster and less expensively than the ovens then in use, including the nozzle ovens. These new ovens are much shorter than previous ovens, taking less plant space, and consume far less energy. There was testimony from industry representatives that Thermal's ovens have "revolutioned" the drying of objects in their industries, and that they have generally replaced the other types. Thermal received an award from the furniture and woodworking industry in 1980 for the achievement accomplished by Mr. Best in developing the Turbulator brand ovens.

15. The Defendants submitted numerous prior art references in an attempt to show that the '023 patent is invalid. They relied upon one patent, U.S. Patent No. 1,677,524 to Wigglesworth, as an anticipation, and upon, at various times, a total of approximately twenty-seven (27) references as rendering the '023 patent obvious. These references include the following:

U.S. Patent No. 2,917,299 to Hess
U.S. Patent No. 2,236,115 to Arthur
U.S. Patent No. 1,412,598 to Ayers and Bogaty
U.S. Patent No. 2,376,174 to Munning
U.S. Patent No. 1,720,214 to Gallerani
U.S. Patent No. 842,025 to Schwartz
U.S. Patent No. 2,489,820 to Russell
U.S. Patent No. 3,324,571 to Stock
U.S. Patent No. 2,152,312 to Jennings
U.S. Patent No. 3,434,222 to Malmquist
U.S. Patent No. 2,050,180 to Hurxthal
U.S. Patent No. 1,825,790 to Hansen
U.S. Patent No. 1,360,705 to Allsop, et al.
U.S. Patent No. 2,758,386 to Cobb
1957 proposal No. 3206 from The Lanley Co. to Pacific Clay Products Co.
Lanley Co. drawing No. 4216 corresponding to the 1957 proposal.

16. The Re-examination Certificate No. 599 indicates, however, that all but two of the references relied upon by Defendants were considered by the Patent and Trademark Office during the re-examination of the '023 patent. The two references not considered were U.S. Patent No. 2,326,115 to Arthur and U.S. Patent No. 1,412,598 to Ayers and Bogaty. Neither of these two references is any more pertinent than the prior art considered by the Patent Office during the re-examination of the '023 patent.

17. The scope and content of the prior art was addressed by Mr. Best who discussed the "hot boxes" and "nozzle" ovens previously used in the furniture industry. Mr. King, Defendants' expert witness, also testified as to the scope and content of the prior art, which includes the prior art references previously considered by the Patent Office during the original examination and re-examination of the '023 patent, and the patents to Arthur and to Ayers and Bogaty. The Court determines that these previously used ovens and prior art references define the scope and content of the prior art, as well as the Caterpillar proposal and engineering blueprints discussed in more detail later in this memorandum.

18. At trial, the Defendants asserted that the Wigglesworth patent includes each element claimed in the '023 patent, and that the Lanley drawings and proposals, the Arthur patent, and the Ayers and Bogaty patent collectively teach each element claimed in the '023 patent. The Defendants then summarily assert that the other references teach or disclose elements claimed in the '023 patent.

19. There was much testimony and demonstration as to the differences between the prior art and the claimed invention. Dr. Gene Colwell, a professor at the Georgia Institute of Technology and an expert in the field of heat transfer, called as an expert witness by the Plaintiffs, demonstrated numerous material differences between Defendants' prior art references and the invention of the '023 patent. The prior art references differ from the invention by their inclusion of one or more of the following: (1) obstructing air flow between the fans and the objects being dried; (2)

obstructing return air flow with partitions or air ducts; (3) reheating all of the return air; (4) not recirculating the air to the back side of the fans; and (5) not delivering the air in a turbulent condition directly against the objects being dried. As Dr. Colwell testified, each of the respective prior art references utilizes a principle different from that claimed by Mr. Best, in that they utilize return air ducts, air directing vanes, centrifugal fans that deliver laminar air flow, and steam for curing in a humid environment.

20. In particular, the Wigglesworth patent discloses a hosiery dryer which includes longitudinal partitions and a shroud around the fan. Dr. Colwell testified that based upon his studying of the patent, Wigglesworth teaches that the path between the fan and object to be dried is obstructed and that the air flow returning to the fan is also obstructed.

21. The Arthur patent teaches drying articles using the combination of centrifugal and propeller fans. In Arthur, however, air is not recirculated to the back side of the fan, and as testified by Dr. Colwell, the air is obstructed by being circulated through the potatoes on a conveyor.

22. The Ayers and Bogaty patent includes vertical partitions running the length of the ovens, and a casing surrounds the fan. Dr. Colwell testified that both the air path between the fan and the object, and the return air path, are obstructed in this reference.

23. The Lanley drawings and proposals disclose a batch-type oven which utilizes steam to cure ceramic material in a humid environment. Ducts redirect the air to the fans, and vanes which direct the air are disposed in front of the fans. Dr. Colwell testified that these ducts are an obstruction to the return air and that the vanes obstruct the air between the fan and the objects.

24. In summary, Dr. Colwell testified and demonstrated to the Court that after a close study of these references, as well as all other prior art references cited and relied upon by the Defendants to prove invalidity, none disclosed each and every element recited in the claims of the '023 patent-in-issue. In addition, these references collectively do not disclose or suggest the combination of the individual elements claimed in the '023 patent.

25. The Plaintiffs offered the expert witness, Dalbert U. Shefte, Esquire of the Charlotte, North Carolina Patent Bar who testified, among other things, that based upon numerous factors, including the technology involved, the degree of technical advancements in the prior art and the education of the Defendant Campbell and others in the field, the level of skill in the art is relatively low. The Defendants made no effort to dispute this evidence and the Court finds that the level of skill in the pertinent art is relatively low.

26. The evidence shows without doubt that the oven built in accordance with the claims of the '023 patent has resulted in dramatic increases in the rate of heat transfer previously achieved in industrial ovens. The Turbulator brand oven has enjoyed considerable commercial success as shown by the fact that the Plaintiffs have sold more than 200 ovens in very specialized markets in less than seven years. This type oven has replaced the nozzle type ovens in the furniture industry, and is now used by furniture companies making in excess of 80% of the case goods in the United States. The Plaintiffs' oven has received industry recognition, as shown not only by the sales but also by Plaintiffs' receipt in 1980 of the challenger award from the International Woodworking Machinery and Furniture Supply Fair for the oven's significant contribution to the furniture and woodworking industry.

27. The evidence presented by the Defendants to support their defense under 35 U.S.C.A. Section 112 that certain words or phrases contained in the specification or claims are vague and indefinite is not persuasive. The Defendant Campbell testified by way of deposition which was read at trial that he understood the patent. The technical expert witnesses for both parties understood the specification and claims. Dr. Colwell stated that the language of the specification and claims is readily under-

stood by those skilled in the art. Attorney Shefte, who testified as an expert witness in the area of patent prosecution, testified that based upon Dr. Colwell's testimony, in his opinion, the language of the specification and claims was sufficiently definite to satisfy the requirements of Section 112.

28. After the trial of the case was concluded but before the Court ruled on the issue of validity the Defendants moved to invalidate the patent based upon additional newly discovered evidence. While counsel for the Plaintiffs seriously disputed the Defendants' claim that the evidence was newly discovered the Court decided in the interest of justice and fairness to hear the evidence. This hearing was held in Asheville on October 15, 1987 and both sides presented additional evidence.

The Defendants claim that the '023 patent is invalid because the oven described and claimed therein was on sale, offered for sale or disclosed in a printed publication more than one (1) year prior to the filing date of June 16, 1978. The Defendants further allege invalidity and enforceability, based upon the Plaintiffs' failure to inform the Patent and Trademark Office of certain ovens either offered for sale, sold or disclosed in a printed publication, thereby violating Plaintiffs' duty of candor with the Patent Office under 37 C.F.R. Section 1.56.

29. The evidence offered as to these defenses shows that the Plaintiff Thermal offered for sale a "paint dry oven" to Caterpillar Tractor Company by a written proposal dated November 11, 1976. The sale was confirmed by a purchase order from Caterpillar dated March 29, 1977. The proposal does not describe a complete oven but does describe certain features of the proposed oven as follows:

> "A single row of steam coil (approximately 4' × 4' square) will be installed in front of the propeller fan to comprise the air-heating system for the oven. The turbulating internal oven air will be drawn behind the fans and forced through the flexible steam coils."

An engineering blueprint relating to the proposal was also admitted, which blueprint depicted the steam coil heat exchanger positioned directly in front of the propeller fan.

30. Dr. Colwell examined the proposal and related drawings and testified that the air path between the fan and the object to be dried was obstructed by the heat exchanger. He further stated that none of the air returning to the fan would be reheated, and expressed the opinion that in view of the proposal requiring the air to pass through the heat exchanger it would most likely not be turbulent.

31. Later Thermal reconsidered the proposal and calculated that the oven described in the proposal would not work, and decided to redesign it before installing it at Caterpillar's plant. Hence, the oven described in the proposal was never built or sold.

32. Eight engineering blueprints dated prior to June 16, 1977 describe in detail the redesigned oven which was actually installed at Caterpillar's plant in accordance with those drawings. The redesigned oven was not shipped to Caterpillar until on or about July 7, 1977, and was fully assembled at Caterpillar's plant in Peoria, Illinois sometime after it was shipped.

33. The oven described in the blueprints, and installed at Caterpillar's plant includes solid interior walls spaced away from the exterior walls. The area between these interior and exterior walls is enclosed by the roof of the oven and connecting walls at each end so as to form a completely enclosed return air duct or plenum along each side wall. Mounted in each interior wall are two rows of propeller fans which are each surrounded by a shroud. Also mounted in the interior walls below the fans are steam coil heat exchangers. These heat exchangers consist of two rows of small steam coils, front and back, which coils run parallel in several passes back and forth from end to end of the heat exchanger, the back row being staggered to fill the gap between the coils in the front row. When the fans are operated, all of the return air must pass through these heat exchangers in order to return to the back of the fans.

34. Both the Plaintiff Best and an engineer employed by Thermal, testified that the oven installed at Caterpillar according to the blueprints basically did not work to enhance the transfer of heat in the oven. They stated that very little air was being delivered by the fans. It was necessary to modify the oven in the late fall of 1977 in order to enable it to function properly.

35. Dr. Colwell testified that based upon his review of the Caterpillar blueprints, it was his opinion that the path of the air returning to the back side of the fans was obstructed by the heat exchangers, since all of the air had to pass through the heat exchanger in returning to the fans. He further testified that all of the return air was reheated, and that based upon the testimony of Mr. Best and Mr. Arehart concerning their observations of the operation of the oven, the air leaving the fans was not turbulent.

36. Dr. Colwell compared the elements of the ovens described in the proposal and the engineering blueprints submitted to Caterpillar to the prior art patents relied upon by the Defendants, and stated that the proposal and blueprints disclosed elements contained in the Defendants' other prior art references, particularly, the patents to Manning, Allsop, et al, Wigglesworth, Ayers and Bogaty, Schwartz, and Hildebrand. Attorney Shefte testified that he believed the prior art references considered by the Patent Office during the original examination and re-examination of the '023 patent were more pertinent than the art disclosed in the proposal and blueprints, especially in view of the evidence that the ovens disclosed in these documents would not function properly.

## CONCLUSIONS OF LAW

1. This action arises under 35 U.S.C.A. Sections 271 and 281 and this Court has jurisdiction of the parties and the subject matter under 28 U.S.C.A. Sections 1331, 1338. Venue is proper in this Court under the provisions of 28 U.S.C.A. Sections 1391(b) and (c) and 1400.

2. A patent issued by the United States Patent and Trademark Office is presumed to be valid and a party asserting invalidity has the burden of establishing such assertion. 35 U.S.C.A. Section 282. The Courts have construed this statute to require that the patent challenger must establish facts showing invalidity by clear and convincing evidence, and the ultimate burden of persuasion never shifts from such challenger. *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir.1984).

■ 3. The Defendants as the challengers of the validity of the patent in suit "must not only come forward with evidence of a *prima facie* case of invalidity but ultimately prove facts, under a clear and convincing standard that support a conclusion that the patent is invalid." *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970 (Fed.Cir. 1986). The fact that there was a successful re-examination of this patent, even with amended claims, makes the Defendants' burden of proving invalidity a heavier one. As stated by the Court in *Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.*, 807 F.2d 955, 961 (Fed.Cir.1986):

Nor did the district court give any credence to the PTO reexamination proceeding, which upheld the validity of claims 1 and 6 despite the presence of much the same art as was presented before the district court. In *Interconnect Planning Corp., v. Feil*, [774 F.2d 1132, 1139, 227 U.S.P.Q. 543, 548 (Fed.Cir.1985) ] this court stated that an examiner's decision on an original or reissue application is "evidence the court must consider in determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence," and that, upon reissue, the burden of proving invalidity was "made heavier."

■ 4. The Defendants contend that the patent is invalid under the provisions of 35 U.S.C.A. Section 102. In order to prove that the claims of this patent are anticipated under Section 102 the Defendants must show by clear and convincing evidence that each element of the claims are found in a single prior art reference. *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 771 (Fed.Cir.1983). The Defendants claim that the Wigglesworth patent anticipates the

claims of the '023 patent is unfounded. Dr. Colwell testified the Wigglesworth includes longitudinal partitions that obstruct air flow. The Wigglesworth patent was considered by the Patent Office on re-examination and no rejection was made based upon Section 102. The Court concludes that Wigglesworth does not disclose each and every element of any of the claims in issue, and finds that the Defendants have not met their burden that the '023 patent is invalid under 35 U.S.C.A. Section 102.

5. The Defendants argue and contend that the claims at issue are invalid as being obvious to one skilled in the art under 35 U.S.C.A. Section 103. They mostly relied upon five prior art references as follows: (1) the Lanley drawing and proposal; (2) the Arthur patent; (3) the Ayers and Bogaty patent; (4) the Caterpillar proposal and drawing, and (5) the Caterpillar installation engineering blueprints, to prove obviousness, and asserted that the remaining patents disclose the elements claimed in the '023 patent. Dr. Colwell demonstrated that these references, as well as the other patents cited by the Defendants, taken either alone or together, fail to disclose the combination of elements claimed in the '023 patent.

■ Where a party challenges the validity of the patent under 35 U.S.C.A. Section 103 as having been obvious to a person of ordinary skill at the time the invention was made, the Court must follow the procedural investigation established by *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) to evaluate the invention. The Court must make a determination of: (1) the scope and content of the prior art; (2) the difference between the alleged invention and the prior art; (3) the level of ordinary skill in the art, and (4) objective evidence of non-obviousness.

■ 6. Evidence of secondary considerations such as commercial success, long felt need, replacing other products in the field, praise by others, including the Defendants, and the presence of copying by the Defendants must always, when present, be considered en route to a determination of obviousness. As stated in *Stratoflex, Inc.*

*v. Aeroquip Corp.*, 713 F.2d 1530, 1538–39 (Fed.Cir.1983):

> Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not. It is to be considered as part of all evidence, not just when the decisionmaker remains in doubt after reviewing the art.

These secondary considerations are referred to as objective evidence of non-obviousness. Under *Graham*, a district court makes proper findings of fact on these four factual inquiries as a basis for determining the ultimate legal question of obviousness. *Custom Accessories, Inc. v. Jeffrey–Allan Industries, Inc.*, 807 F.2d 955 (Fed.Cir. 1986).

■ 7. After considering the scope and content of the prior art, the differences between the alleged invention and the prior art, the level of skill in the art and these secondary considerations, the Court finds and concludes that the Defendants have not met their burden of proving the claims of the '023 patent are invalid under 35 U.S.C.A. Section 103. This conclusion is further supported by Dr. Colwell's testimony that the invention disclosed and claimed in the patent would not have been obvious to him at the time of Best's invention and further by the comment of Mr. King, the Defendants' technical expert about how much stronger the '023 patent has become as a result of the re-examination by the Patent Office.

8. The Defendants argue and contend that the claims are invalid for failure to comply with the provisions of 35 U.S.C.A. Section 112 in that certain claim language is vague and indefinite. They question the following language: "fan assembly," "delivering air directly," "delivering air ... in a turbulent condition," "essentially unobstructed paths," "relatively minor portion," "portion," "only a portion," "turbulent blasts of air," and "heating only a portion of the air."

9. Section 112 requires that the specification shall contain a written description of the invention, and of the manner and process of making and using it. The statute requires the written description to be full, clear and concise so as to enable any person skilled in the art to make and use it. The second paragraph of the statute provides that "the specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." The challenged language survived two examinations by the Patent Office without being rejected as violative of this section. The Defendant Campbell admitted in his deposition testimony read during trial, that he understood the '023 patent and the evidence shows he was able to make and use ovens which the Plaintiffs claim infringe these claims. Dr. Colwell testified that the words contained in the claims are understood by those skilled in the art.

■ 10. The courts have consistently held that a patentee may use his own words in claiming his invention as he wishes, so long as he remains consistent in their use and makes their meaning reasonably clear. Words used in such claims are to be given their "ordinary and accustomed meaning" unless the inventor apparently used them differently. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753 (Fed.Cir. 1984). Claims are not to be read in a vacuum, however, and limitations in them must be interpreted in light of the specification, giving claims their broadest reasonable interpretation. *In Re Marosi*, 710 F.2d 799 (Fed.Cir.1983). The test is "whether one of ordinary skill in the art would understand what is claimed when read in light of the specification." *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed.Cir.1984).

■ The testimony, of those skilled in the art, and the demonstrations in the court room convinced the Court that the challenged language is not vague and indefinite and therefore concludes that the Defendants have not met their burden of proving

that the claims are invalid for failure to comply with Section 112.

11. The Defendants argue and contend that the newly discovered eivdence consisting of Plaintiffs' proposal and the drawings of the redesigned oven for Caterpillar invalidate the claims of the '023 patent under the provisions of Sections 102(b). The Defendants contend that this new evidence shows that the invention was described in a printed publication, and in public use or on sale in this country more than one year prior to the date of the application for patent.

■ 12. The party asserting that a patent claim is anticipated under 35 U.S.C. A. Section 102 must demonstrate among other things, identity of invention. *Kalman v. Kimberly–Clark Corp.*, 713 F.2d 760, 771 (Fed.Cir.1983). The Defendants have failed to demonstrate identity between the oven described in the proposal and the oven described in the engineering blueprints and that described and defined by the claims of the '023 patent. In fact the evidence supports the Plaintiffs' contentions on the issue. None of the prior art references relied upon by the Defendants under Section 102(b) described either expressly or inherently, each and every element of the claims in issue or that the claimed invention was previously known or embodied in a single prior art or practice. *Id.* at 771.

■ 13. The Defendants have also failed to show that the subject matter of the patent was offered for sale or on sale within the meaning of Section 102(b). In asserting such defense the Defendants have the burden of proving that there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art. *UMC Electronics Co. v. United States*, 816 F.2d 647, 656 (Fed. Cir.1987).

14. The Court concludes that the proposal and the engineering blueprints do not anticipate the claims of the '023 patent.

The ovens offered for sale or sold which are described in the proposal, purchase order, and the engineer blueprints do not anticipate these claims. The elements of the ovens described in these prior art references are less pertinent than the prior art patents considered by the Court and twice considered by the Patent Office. The evidence concerning Caterpillar strengthened the opinion of Plaintiffs' experts that the high heat transfer oven defined by the claims of the patent would not have been obvious to one of ordinary skill in the art at the time of the invention. The Court concludes that the claimed invention is not obvious when the proposal, purchase order and engineering blueprints submitted to Caterpillar are added to the prior art.

■■■ 15. The Defendants argue and contend that the claims of the '023 patent are invalid and unenforceable for the failure of the applicant and his attorneys to fulfill their duty of candor before the Patent and Trademark Office under 37 C.F.R. Section 1.56, i.e., fraud on the Patent Office. Two elements are necessary in order to establish fraud on the Patent Office during the prosecution of a patent: (1) the materiality of the act complained of, and (2) the intent of the actor. Fraud is determined "only by a careful balancing of intent in light of materiality." When there is little proof of one element, there must be a greater proof of the other. *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1362–64 (Fed.Cir.1984). The Defendants allege that the Plaintiffs committed fraud by failing to disclose relevant prior art, including the proposal and engineering blueprints relating to the Caterpillar sale, and by mischaracterizing the teachings of prior art during both the original prosecution and re-examination of the '023 patent. The file history of both the original prosecution and the re-examination was admitted into evidence, and evidence was heard as to the various disclosures, affidavits and documents submitted by Mr. Best to the Patent Office during the original prosecution and the re-examination. Attorney Shefte stated that in his opinion the proposal, purchase order, and engineering blueprints relating to the Cat-

erpillar sale were less pertinent and less material than the prior art patents considered by the Patent Office during the original and re-examination.

16. The Defendants have a heavy burden of persuasion on the issue of fraud on the Patent Office. *Norton v. Curtiss*, 433 F.2d 779, 797 (C.C.P.A.1970). The Court concludes that the Defendants have failed to carry their burden of proving fraud on the Patent Office by the Plaintiffs or their attorneys during either the original prosecution or the re-examination of the '023 patent.

■■■ 17. Finally, the Defendants allege that the patent is invalid for failure to meet the requirements of Section 101, and that the Plaintiffs have misused the patent. The Court finds and concludes that the Defendants have failed to meet their burden of proof on these affirmative defenses.

■■■ 18. Based upon all the evidence, briefs and arguments of counsel the Court finds and concludes as follows:

A. Claims 13, 14, 20–25, 28 and 29 of the Re-examination Certificate No. 599 of U.S. Patent No. 4,235,023 are valid and enforceable.

B. There has been no showing that either Plaintiffs or their attorneys committed fraud on the Patent Office during the original prosecution of the U.S. Patent No. 4,235,023 or the re-examination of Patent No. 4,235,023.

A judgment as to validity of the patent will be entered simultaneously herewith.